UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
———————————————————————

|  |  |  |
|---|---|---|
|  | : |  |
| THE RESEARCH FOUNDATION FOR | : |  |
| THE STATE UNIVERSITY OF NEW YORK, | : |  |
|  | : | **COMPLAINT** |
| Plaintiff, | : | **JURY TRIAL** |
| - against - | : | **DEMANDED** Index No.: |
|  | : | 2:21-cv-1898 |
| TELLURIC LABS, LLC. | : | Date Filed: April 8, 2021 |
|  | : |  |
| Defendant. | : |  |
|  | : |  |

———————————————————————

Plaintiff, The Research Foundation for The State University of New York (the "Foundation"), brings this Complaint against Defendant Telluric Labs LLC ("Telluric") (collectively the "Parties") based on the failure of Telluric to remit payment for research and development work in breach of three executed research agreements between the Parties. Foundation hereby alleges as follows:

## NATURE OF THE ACTION

1. Telluric and the Foundation entered into an Evaluative Testing Agreement dated as of April 8, 2019 (the "Ferdman Agreement") pursuant to which Foundation agreed, among other things, to deliver in three (3) phases a hardware design of a timestamping system in electronic form. The Ferdman Agreement is attached hereto as **Exhibit A**.

2. As part of the Ferdman Agreement, Telluric agreed, *inter alia*, to pay the total cost of the Project (as defined in the Agreement) totaling One Hundred Sixty-Eight Thousand One Hundred Sixty-Four U.S. Dollars and 00/100 ($168,164.00). This amount was to be paid to Foundation by Telluric in three installments each in the amount of Fifty-Six Thousand Fifty-Four 66/100 U.S. Dollars ($56,054.66) corresponding to the end of each phase of work as outlined in

the Scope of Work. Telluric failed to pay Foundation in accordance with the terms of the Ferdman Agreement. Accordingly, Telluric has materially breached its duty under the Ferdman Agreement to pay these costs. Telluric's breach of its obligations under the Ferdman Agreement has resulted in damage to Foundation.

3.      Telluric and the Foundation entered into a Subcontract Agreement dated as of September 4, 2019 (the "Rijssenbeek Agreement") pursuant to which Foundation agreed, among other things, to assist with the design of certain software and hardware by performing hardware simulations. The Rijssenbeek Agreement is attached hereto as **Exhibit B**.

4.      As part of the Rijssenbeek Agreement, Telluric agreed, *inter alia*, to pay the total cost of the project totaling One Hundred Nineteen Thousand Nine Hundred Eighty-Five U.S. Dollars and 16/100 ($119,985.1600). This amount was to be paid to Foundation by Telluric in quarterly installments each in the amount of Twenty Thousand Two Hundred Sixty-One U.S. Dollars and 86/100 ($20,261.86) for the first year, and a payment of Nine Thousand Seven Hundred Thirty-Four U.S. Dollars and 18/100 ($9,734.18). Telluric has failed to pay Foundation in accordance with the terms of the Rijssenbeek. Accordingly, Telluric has materially breached its duty under the Rijssenbeek Agreement. Telluric's breach of its obligations under the Rijssenbeek Agreement has resulted in damage to Foundation.

5.      Telluric and the Foundation entered into a Subaward Agreement executed on or about April 29, 2019 (the "Suchalkin Agreement", and collectively with the Ferdman and Rijssenbeek Agreement, referred to as the "Research Agreements") pursuant to which Foundation agreed, among other things, to conduct research with the target to identify a high-frequency fiber modulator used in particle detectors ("Research Services"). The Suchalkin Agreement is attached hereto as **Exhibit C**.

6.     As part of the Suchalkin Agreement, Telluric agreed, *inter alia*, to pay the total price of  Twenty-Four Thousand Eight Hundred Seventy-Seventy U.S. Dollars and 00/100 ($24,877.00) to Foundation for its Research Services. This amount was to be paid to Foundation by Telluric in three installments each in the amount of Eight Thousand Two Hundred Ninety-Two U.S. Dollars and 33/100 ($8,292.33) due on June 4, 2019, September 4, 2019, and December 2, 2019, respectively. The remaining Five Thousand Eight Hundred Four U.S. Dollars and 63/100 ($5,804.63) owed was to be paid in full at the earlier of June 4, 2019 or the completion of the first phase of work, as outlined in the Scope of Work. Telluric has failed to pay Foundation for its Research Services in accordance with the Suchalkin Agreement and as such, has materially breached its duty under the Suchalkin Agreement. Telluric's breach of its obligations under the Suchalkin Agreement has resulted in damage to Foundation.

7.     Foundation hereby brings this action against Telluric based upon breach of contract, unjust enrichment, account stated, promissory estoppel and quantum meruit, and seeks an award of monetary damages for the economic losses caused by Telluric's unlawful conduct, including interest, attorneys' fees and costs and disbursements, and any such other and further relief that this Court deems just and equitable.

## PARTIES

8.     Foundation is a private domestic non-profit education corporation, with a principal place of business at 35 State Street, Albany, New York 12207, and an office at W5510 Melville Library, Stony Brook University, Stony Brook, New York 11794.

9.      Foundation's primary responsibility is to administer grants and sponsored programs on behalf of the State University of New York ("SUNY"). Since its establishment in 1951, the Foundation has facilitated research, education and public service at 30 state-operated SUNY campuses for research and other staff across the state, including Stony Brook University ("SBU").

10.     Foundation owns intellectual property rights to technology developed by individuals in their capacity as SUNY employees.

11.     Upon information and belief, Defendant Telluric is a limited liability company organized under the laws of the State of New Jersey, with a principal place of business at 788 Shrewsbury Avenue, Tinton Falls, New Jersey 07724.

## JURISDICTION AND VENUE

12.     Federal diversity jurisdiction exists pursuant to 28 U.S.C. §1332, as Plaintiff is a New York non-profit corporation with its principal place of business in New York and Defendant is a limited liability company existing under the laws of the state of New Jersey. The amount in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000.

13.     Venue in the Eastern District of New York is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions on which the claims are asserted herein are based in this district, and the subject contract was executed in this District.

## FACTUAL BACKGROUND

14.     Upon information and belief, Telluric received a grant from the United States Department of Energy number DE-SC0017156 (the "Prime Award") to conduct the research project entitled "IP Access Gateway" (the "Project").

15.     Upon information and belief, the Prime Award was for a total amount of One Million One Hundred Fifty-Four Thousand Nine-Hundred Ninety-Five U.S. Dollars ($1,154,995.00).

16.     Upon information and belief, Telluric engaged three faculty members at Stony Brook University to utilize those faculty members' expertise in their respective fields and subcontract certain portions of research and development for the Project.

The Ferdman Agreement

17.     Foundation entered into an Evaluative Testing Agreement, effective as of April 8, 2019 and as modified on November 8, 2019, with Defendant (the "Ferdman Agreement"), pursuant to which Foundation agreed, among other things, through its Principal Investigator ("PI") Dr. Michael Ferdman, to conduct a research and development project consisting of three (3) phases to deliver a hardware design of a timestamping system in electronic form. The Ferdman Agreement with subsequent modification is attached to this complaint as **Exhibit A** and hereby incorporated by reference.

18.     Dr. Ferdman, as a SUNY faculty member, engaged graduate students at SBU to help perform the research and development needed for the work.

19.     The Scope of Work attached to Ferdman Agreement (the "Ferdman SOW") outlined the three (3) phases the Foundation and Defendant aimed to complete and explicitly stated that this was a research project, and that "the performance objectives provided above are merely targets and not a promise to provide deliverables that can perform at the specifications above."

20.     The Ferdman Agreement further provided, in relevant part as follows:

> 2. **Compensation**   (a)[Telluric] shall pay the Foundation $168,164.00 for the PROJECT expenses and other related costs . . . (b) An interest penalty of 1.5% per month will be added to the total invoice amount of payment if not received within forty-five (45) days of the invoice date.

21.     During the first Phase, according to the Ferdman SOW, Dr. Ferdman was to deliver "the closest reasonable approximation" of a hardware design of a timestamping system in electronic form.

22.     The hardware design Telluric wanted Dr. Ferdman and his team to build was wholly conceptual, and thus the parties understood and agreed this was a project of research and development.

23.     The Ferdman SOW explained that "[g]iven the exploratory nature of this [research and development] project, throughout the project, the PI, his students, and his collaborators at [SBU] will work with Telluric Labs to adjust the architectural design . . .".

24.     The Ferdman SOW also stated "This Scope of Work is a research project. The Performance objectives provided above are merely targets and not a promise to provide deliverables that can perform at the specifications provided above."

25.     In fact, many of the technical specifications provided by Telluric were ineffectual, and Dr. Ferdman and his team spent much of their time testing and re-testing those unsuccessful designs insisted on by Telluric.

26.     The Project Investigator from Telluric, Radu Radulescu, constantly interfered with Dr. Ferdman and his students' work, and would take up an enormous amount of their time by requesting changes and additional work to be done by Foundation, which was outside of the SOW.

27.     Additionally, Mr. Radulescu incessantly bothered the graduate students directly, and attempted to create additional work for them outside the Ferdman SOW. Eventually, the students complained about Mr. Radulescu's behavior and Dr. Ferdman instructed Mr. Radulescu that the contract designated Dr. Ferdman as the PI for Foundation, and thus he should only speak with him directly and to no longer contact the students.

28.     As a direct result of Mr. Radulescu's persistent interference, Phase 1 of the Ferdman SOW took Dr. Ferdman and his students significantly more time than originally anticipated, which required the Foundation to pay additional salary, benefits, and tuition costs to account for this extra work.

29.     At this point, the relationship between the Parties was such that Dr. Ferdman refused to engage in any additional contracts with Telluric. Dr. Ferdman wanted the Ferdman Agreement completed, and their working relationship to be terminated.

30.     The hardware design was completed as outlined in Phase 1 of the Ferdman SOW on or about May 6, 2020.

31.     Dr. Ferdman then moved on to the next phases. However, pursuant to the Ferdman SOW, Telluric was required to provide Foundation with certain equipment and hardware for Foundation to complete its work.

32.     Upon information and belief, Telluric never provided Foundation with the equipment and hardware required to advance the next phases, making it impossible for Dr. Ferdman and his students to proceed.

33.     Pursuant to the Ferdman Agreement, upon termination of the agreement, "[Telluric] shall be liable for all reasonable costs incurred or obligated by Foundation at the time of such termination. . . Non-cancellable commitments shall include salary, benefit, and tuition costs for graduate research assistants. . ."

34.     Upon information and belief, Defendant has only paid one invoice of $56,054.66 to Foundation, and a payment of $3,130 upon execution of a modification of the agreement, and Defendant still owes $112,109.34 [1] pursuant to Section 2 of the Ferdman Agreement, without interest.

---

[1] Interest continues to accumulate as the balance remains unpaid to date.

35.     Upon information and belief, in addition to the numerous invoices sent to Defendant, Foundation provided Defendant with written notice of Defendant's default and demand for payment under the Ferdman Agreement.   Copies of the written notices and unpaid invoices are collectively attached hereto as **Exhibit D** and hereby incorporated by reference.

36.     Upon information and belief, Defendant has never proposed any plan for payment of the Ferdman Agreement and continues to avoid and delay communications with Foundation. To date, Defendant has still not satisfied its obligations under the terms of the Ferdman Agreement.

The Rijssenbeek Agreement

37.     Telluric and the Foundation entered into a Subcontract Agreement dated as of September 4, 2018 (the "Rijssenbeek Agreement") a copy of which is attached to this complaint as **Exhibit B** and hereby incorporated by reference.

38.      Pursuant to the Rijssenbeek Agreement the Foundation agreed, among other things, through its PI Dr. Rijssenbeek to "use its best efforts to conduct and carry out the Foundation's portion of the Project described in the scope of work" which was attached to the Rijssenbeek Agreement as Annex 2.

39.     Dr. Rijssenbeek, as a SUNY faculty member, engaged graduate students at SBU to help perform the research and development needed for the work.

40.     Dr. Rijssenbeek used his best efforts to conduct and carry out the Foundation's portion of the Project described in the statement of work despite never receiving delivery of certain hardware from Telluric, i.e. the FLX-711 card.

41.     Without the FLX-711 card from Telluric, Dr. Rijssenbeek could not successfully attain functionality of certain retiming code despite best efforts to do so, nor could he develop or test any custom hardware based on the absence of the FLX-711 card.

42.     Upon information and belief all of the equipment, e.g. transceivers, electronic components, cables etc. that Telluric provided to Dr. Rijssenbeek's lab, was returned to Telluric in the Fall of 2020.

43.     The Rijssenbeek Agreement provided, in relevant part:

> 4. Compensation.
>
> In consideration of the services to be performed pursuant to this Agreement, [Telluric] shall make quarterly payments of $20,261.86 for the first year of the project and $9,734.18 during the second year of the project to Foundation for the total amount of $119,985.16 in accordance with the STTR Proposal with the first payment due ninety (90) days from the execution of the Prime Award.

44.     The Rijssenbeek Agreement further provided, in relevant part:

> 6. Termination
>
> In the event of termination [Telluric] shall reimburse Foundation for contractual commitments and financial obligations incurred by Foundation in performance of this Agreement prior to such termination, if such financial obligations or contractual commitments cannot be canceled by the Foundation.

45.     The Foundation has incurred a total of Ninety-Nine Thousand Nine Hundred Twenty-Five U.S. Dollars and 47/100 ($99,925.47) in non-cancellable financial obligations the performance of the Rijssenbeek Agreement.

46.     Upon information and belief, Defendant has only paid in full four invoices of $20,261.86  and one partial invoice to Foundation, the last payment being made in August of 2019, and Defendant still owes $24,641.80 pursuant to Section 4 of the Rijssenbeek Agreement.

47.     Upon information and belief, in addition to the numerous invoices sent to Defendant, Foundation provided Defendant with written notice of Defendant's default detailing the outstanding amount owed by Defendant to Foundation totaling Twenty-Four Thousand Six Hundred Forty-One U.S. Dollars and 80/100 ($24,641.80) without interest and demand for payment under the Rijssenbeek Agreement. Copies of the written notices and unpaid invoices are collectively attached hereto as **Exhibit E** and hereby incorporated by reference.

48.     Upon information and belief, Defendant has never proposed any plan for payment of the Rijssenbeek Agreement and continues to avoid and delay communications with Foundation. To date, Defendant has still not satisfied its obligations under the terms of the Rijssenbeek Agreement.

The Suchalkin Agreement

49.     Telluric and the Foundation entered into a Subaward Agreement executed on or about April 29, 2019 (the "Suchalkin Agreement"). The Suchalkin Agreement is attached to this complaint as **Exhibit C** and hereby incorporated by reference.

50.     Pursuant to Paragraph 2 of Suchalkin Agreement, Foundation and Telluric agreed to "engage in a collaborative research effort as necessary to accomplish the work and services set forth in the [Scope of Work] attached hereto".

51.     Foundation, through its PI Dr. Suchalkin, agreed to, among other things, "do research to identify high-frequency fiber modulator". The Scope of Work clarified that "[t]his Scope of Work is a research project. The performance objectives provided above are merely targets and not a promise to provide deliverables that can perform at the specifications provided above."

52.     The parties also agreed pursuant to Section 10 of the Suchalkin Agreement, Foundation disclaimed all warranties, expressed or implied, as to the condition or performance of the "research, research results, deliverables, work product, or any inventions, intellectual property, products, or services . . . under this agreement . . ."

53.     The Suchalkin Agreement further provided, in relevant part as follows:

6. **Compensation and Maximum Cost**

(a) [Telluric] shall pay the Foundation a fixed price of $24877 for the work performed in accordance with the terms of this agreement. This sum shall be paid in accordance with the schedule set forth below . . .

(d) An interest penalty of 1.5% per month will be added to the total invoice amount of payment if not received within forty-five (45) days of the invoice date.

54.     The total price of Twenty-Four Thousand Eight Hundred Seventy-Seventy U.S. Dollars and 00/100 ($24,877.00) Telluric was obligated to pay to Foundation under the Suchalkin Agreement to be paid in three installments, each in the amount of Eight Thousand Two Hundred Ninety-Two U.S. Dollars and 33/100 ($8,292.33) due on June 4, 2019, September 4, 2019, and December 2, 2019. The remaining Five Thousand Eight Hundred Four U.S. Dollars and 63/100 ($5,804.63) owed was to be paid in full at the earlier of June 4, 2019 or the completion of the first phase of work.

55.     Upon information and belief, Foundation successfully completed all performance objective targets under the Suchalkin Agreement.

56.     Upon information and belief, Defendant has only paid two of the three equal installments of \$8,292.33 to Foundation, and Defendant still owes \$8,292.33[2] without interest pursuant to Section 6 of the Suchalkin Agreement.

57.     Upon information and belief, in addition to the numerous invoices sent to Defendant, Foundation provided Defendant with written notice of Defendant's default and demand for payment under the Suchalkin Agreement. Copies of the written notices and unpaid invoices are collectively attached hereto as **Exhibit F** and hereby incorporated by reference.

58.     Upon information and belief, during informal negotiations between Foundation and Defendant for the amounts owed to Foundation under the Ferdman and Suchalkin Agreements, Telluric agreed to pay the outstanding amount owed under the Suchalkin Agreement in exchange for return of certain equipment Telluric left at Stony Brook University, and the promise to engage in good faith settlement discussions regarding the Ferdman Agreement.

59.     A settlement agreement was drafted by Foundation's counsel and sent to Telluric on December 22, 2020 (the "Suchalkin Settlement Agreement and Mutual Releases").

60.     Upon information and belief, Telluric never responded after receiving the draft Suchalkin Settlement Agreement and Mutual Releases.

---

[2] Interest continues to accumulate as the balance remains unpaid to date.

61.     Foundation's counsel followed up numerous times by email and telephone to Telluric who, to this date, have not signed are even acknowledged receipt of the Suchalkin Settlement Agreement.

62.     Instead, with knowledge that the Foundation was represented by counsel, Telluric side-stepped the Foundation's counsel and directly and improperly contacted members of the Foundation's sponsored research department making misinformed False Claims Act threats and baseless assertions of overpayments to Foundation by Telluric. That correspondence is attached hereto as **Exhibit G**.

**AS AND FOR A FIRST CAUSE OF ACTION:**
**BREACH OF CONTRACT – FERDMAN AGREEMENT**

63.     Foundation repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

64.     The Ferdman Agreement is a valid, enforceable, and subsisting contract between Foundation and Defendant, pursuant to which Defendant was obligated to pay Foundation certain for the research and development done by Foundation.

65.     Foundation has duly performed the research and development pursuant to the Ferdman Agreement on its part to be performed to date.

66.     Defendant, however, has failed to pay and compensate Foundation pursuant to the express terms of the Ferdman Agreement, constituting a breach of the Ferdman Agreement.

67.     To date, there is a balance due to Foundation from Defendant on the Ferdman Agreement of no less than $112,109.34 , plus interest for each month after payment was due.

68.     Despite demands from Foundation, Defendant has failed to pay the amount due to Foundation under the Ferdman Agreement and has defaulted under the same.

69.     By reason of the foregoing, Defendant is liable to Foundation for breach of contract in the amount of no less than $112,109.34, plus interest.

**AS AND FOR A SECOND CAUSE OF ACTION:**
**BREACH OF CONTRACT – RIJSSENBEEK AGREEMENT**

70.     Foundation repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

71.     The Rijssenbeek Agreement is a valid, enforceable, and subsisting contract between Foundation and Defendant, pursuant to which Defendant was obligated to pay Foundation certain for the research and development done by Foundation.

72.     Foundation has duly performed the research and development pursuant to the Rijssenbeek Agreement to be performed to date.

73.     Defendant, however, has failed to pay and compensate Foundation pursuant to the express terms of the Rijssenbeek Agreement, constituting a breach of the Rijssenbeek Agreement.

74.     To date, there is a balance due to Foundation from Defendant on the Rijssenbeek Agreement of no less than $24,641.80, plus interest for each month after payment was due.

75.     Despite demands from Foundation, Defendant has failed to pay the amount due to Foundation under the Rijssenbeek Agreement and has defaulted under the same.

76.     By reason of the foregoing, Defendant is liable to Foundation for breach of contract in the amount of no less than $24,641.80, plus interest.

## AS AND FOR A THIRD  CAUSE OF ACTION:
## BREACH OF CONTRACT – SULCHALKIN AGREEMENT

77.     Foundation repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

78.     The Sulchalkin Agreement is a valid, enforceable, and subsisting contract between Foundation and Defendant, pursuant to which Defendant was obligated to pay Foundation certain for the research and development done by Foundation.

79.     Foundation has duly performed all the research and development pursuant to the Sulchalkin Agreement on its part to be performed to date.

80.     Defendant, however, has failed to pay and compensate Foundation pursuant to the express terms of the Sulchalkin Agreement, constituting a breach of the Sulchalkin Agreement.

81.     To date, there is a balance due to Foundation from Defendant on the Sulchalkin Agreement of no less than $8,292.33 plus interest for each month after payment was due.

82.     Despite demands from Foundation, Defendant has failed to pay the amount due to Foundation under the Sulchalkin Agreement and has defaulted under the same.

83.     By reason of the foregoing, Defendant is liable to Foundation for breach of contract in the amount of no less than $8,292.33, plus interest.

## AS AND FOR A FOURTH CAUSE OF ACTION:
## UNJUST ENRICHMENT

84.     Foundation repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

85.     Foundation duly provided services to Defendant by conducting certain research and development pursuant to the Research Agreements.

86.     Defendant retained the services provided by Foundation in the Research Agreements without objection.

87.     Defendant has failed to compensate Foundation for the services it has provided under the Research Agreements.

88.     The reasonable value of the services provided that has not been paid for under all of the Research Agreements is no less than $145,043.47, plus interest.

89.     It is against equity and good conscience for Defendant to retain the benefit of Foundation's services without fully compensating Foundation for the same.

90.     Foundation is therefore entitled to be fully compensated for the reasonable value ($145,043.47) of the unpaid services provided to Defendants, plus interest.

## AS AND FOR A FIFTH CAUSE OF ACTION:
## ACCOUNT STATED

91.     Foundation repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

92.     Foundation forwarded statements to Defendant requesting payment for the services provided to Defendant.

93.     Upon information and belief, the statements were received by Defendant.

94.     Defendant did not timely object to the statements sent by Foundation, nor has Defendant fully compensated Foundation for its services.

95.     Upon information and belief, Foundation has an account stated.

96.     By reason of the foregoing, Defendants are indebted to Foundation in the sum of no less than $145,043.47, plus interest.

## AS AND FOR A SIXTH CAUSE OF ACTION:
## PROMISSORY ESTOPPEL

97.      Foundation repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

98.     Defendant promised Foundation payment as evidenced by the express terms of the Research Agreements.

99.    Defendant knew or should have known that Foundation would reasonably rely on this promise and in doing so would put forth its best effort to perform Foundation's obligations under the Research Agreements.

100.    Foundation reasonably and actually relied on the promise made by Defendants by performing services and incurring expenses in doing same, in full expectation that it would be fully compensated for its services and expenses in accordance with the terms of the Research Agreements signed by Defendant.

101.    As a result of Defendant's conduct, Foundation has suffered substantial losses of no less than $145,043.47, plus interest.

<u>**AS AND FOR A SEVENTH CAUSE OF ACTION:**</u>
<u>**QUANTUM MERUIT**</u>

102.    Foundation repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

103.    Foundation duly provided services to Defendant in good faith.

104.    Defendant retained the services provided by Foundation without objection.

105.    Defendant communicated with Foundation an intention to provide payment owed to Foundation as evidenced by, among other things, the Ferdman Agreement, Rijssenbeek Agreement, Sulchakin Agreement, partial payments, and written communications by and among Foundation and the Defendant.

106.    Defendant has failed to fully compensate Foundation for the services it has provided.

107.    The reasonable value of the unpaid services provided is no less than $145,043.47, plus interest.

108.    It is against equity and good conscience for Defendant to retain the benefit of Foundation's services without compensating Foundation for the same.

109.    Foundation is therefore entitled to be fully compensated for the reasonable value ($145,043.47) of the services provided to Defendants, plus interest.

<strong><u>AS AND FOR A EIGHTH CAUSE OF ACTION:</u></strong><br><strong><u>BREACH OF THE IMPLIED CONVENANT OF GOOD FAITH AND FAIR DEALING</u></strong>

110.    Foundation repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

111.    The Research Agreements constitute valid, enforceable, and subsisting contracts between Foundation and Defendant, pursuant to which Defendant was obligated to pay Foundation certain for the research and development done by Foundation.

112.    Defendant acted in a manner which interfered with Foundation's rights to receive the benefits under the Research Agreements by interfering with and failing to cooperate with Foundation in performance of the Research Agreements.

113.    Defendant violated its duty to act fairly and in good faith.

114.    The implied covenant of good faith and fair dealing is not contrary to any express provision in any of the Research Agreements.

115.    As a result of Defendant's conduct, Foundation has suffered substantial losses of no less than $145,043.47, plus interest.

WHEREFORE, Foundation demands judgment as follows:

(A)    On the first cause of action, in the amount of $112,109.34, plus interest;

(B)    On the second cause of action, in the amount of $24,641.80, plus interest;

(C)    On the third cause of action, in the amount of $8,292.33, plus interest;

(D)    On the fourth cause of action, in the amount of $145,043.47, plus interest;

(E)    On the fifth cause of action, in the amount of $145,043.47, plus interest;

(F)    On the sixth cause of action, in the amount of $145,043.47, plus interest;

(G)    On the seventh cause of action, in the amount of $145,043.47, plus interest;

(H)    On the eighth cause of action, in the amount of $145,043.47, plus interest;

(I)    For reasonable attorneys' fees and the costs and disbursements of this action; and

(J)    Such other and further relief as this Court may deem just

and proper.

Dated: April 8, 2021                          THE RESEARCH FOUNDATION FOR
                                              THE STATE UNIVERSITY OF NEW YORK


                                       By:    /s/ Peter I. Bernstein
                                              Peter I. Bernstein, Esq.
                                              Scully, Scott, Murphy & Presser, P.C.
                                              400 Garden City Plaza, Ste. 300
                                              Garden City, N.Y. 11530
                                              (516) 742-4343


                                              *Counsel for Plaintiff The Research Foundation for
                                              the State University of New York*