UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------X

THE RESEARCH FOUNDATION FOR THE STATE UNIVERSITY OF NEW YORK,

Plaintiff,

-against-

TELLURIC LABS, LLC,

Defendant/Third-Party Plaintiff,

-against-

STATE UNIVERSITY OF NEW YORK AT STONY BROOK, PETER I. BERNSTEIN, MICHAEL FERDMAN, PETER MILDER, FARID SAMANDI, TIANCHU JI and SHENGSUN CHO,

Third-Party Defendants,

----------------------------------X

MEMORANDUM & ORDER
21-CV-1898 (JS)(SIL)

APPEARANCES

For Plaintiff and Third-Party Defendants Michael Ferdman, Peter Milder, Farid Samandi, Tianch Ji, Shengsun Cho: Peter I. Bernstein, Esq.
Drew Berweger, Esq.
Seth M. Weinfeld, Esq.
Scully, Scott, Murphy & Presser P.C.
400 Garden City Plaza, Suite 300
Garden City, New York 11530

For Defendant: David Postolski, Esq.
Gearhart Law
41 River Road
Summit, New Jersey 07901

For Third-Party Defendant State University of New York at Stony Brook:

Nicholas Mesiti, Esq.
Thomas Sica, Esq.
Heslin Rothenberg Farley & Mesiti, P.C.
5 Columbia Circle
Albany, New York 12203

Toni E. Logue, Esq.
NYS Attorney General's Office
200 Old Country Road, Suite 460
Mineola, New York 11501

For Third-Party Defendant Peter L. Bernstein:

Marian C. Rice, Esq.
Meredith Diane Belkin, Esq.
L'Abbate Balkan Colavita & Contini LLP
3 Huntington Quadrangle, Suite 102-S
Melville, New York 11747

SEYBERT, District Judge:

In this breach of contract action, Magistrate Judge Steven I. Locke issued a Memorandum and Order ("M&O") which (1) granted the motion by The Research Foundation for the State University of New York ("Plaintiff" or the "Foundation") to disqualify Michael Ivanciu, Esq. ("Ivanciu") and Codrut Radu Radulescu, Esq. ("Radulescu") from serving as counsel to Telluric Labs, LLC ("Defendant" or "Telluric"); and (2) denied Telluric's cross-motion to disqualify Peter Bernstein, Esq. ("Bernstein") and Bernstein's law firm, Scully, Scott, Murphy & Presser P.C. ("SSM&P") from serving as counsel to Plaintiff. (Nov. 17, 2021 M&O, ECF No. 57.)

Currently before the Court are Defendant's objections to the portion of Judge Locke's M&O that granted Plaintiff's motion to disqualify Ivanciu and Radulescu. (Objs., ECF No. 58; Reply Objs., ECF No. 60.) Defendant has not challenged the M&O to the extent Defendant's cross-motion to disqualify Bernstein and SSM&P was denied. (See Objs. ¶ 16 ("Defendant object[s] to each and every part of Magistrate Judge Steven I. Locke's Order disqualifying Mr. Ivanciu and Mr. Radulescu.").) For the reasons that follow, Defendant's objections are OVERRULED and Judge Locke's decision is AFFIRMED.

FACTUAL BACKGROUND

The Court presumes the parties' familiarity with the factual background of this case and recites the facts necessary to adjudicate Defendant's objections. (See M&O at 2-8.)

The Foundation is a private, New York-based non-profit education corporation. (See Compl. ¶ 8, ECF No. 8.) The Foundation's primary responsibility is to administer grants and sponsored programs on behalf of the State University of New York ("SUNY"). (Id. ¶ 9.) Since its establishment in 1951, the Foundation has facilitated research, education, and public services at thirty SUNY campuses, including Stony Brook University ("SBU"). (Id.) Defendant is a New Jersey incorporated LLC that received a $1,154,995.00 grant from the United States Department of Energy to conduct a research project entitled "IP Access

Gateway" (the "Project"). (Id. ¶¶ 11, 14-15.) After receiving the grant, Telluric engaged three SBU faculty members, Dr. Michael Ferdman, Dr. Michael Rijssenbeek, and Dr. Sergey Suchalkin, to subcontract certain portions of research and development for the Project. (Id. ¶ 16.) Plaintiff and Defendant subsequently entered into separate subcontracts concerning the work Drs. Ferdman, Rijssenbeek, and Suchalkin were expected to perform.

On September 4, 2018, the parties executed the "Rijssenbeek Agreement," which Ivanciu signed for Defendant in his capacity as its President. (See id. ¶ 37; Rijssenbeek Agmt., ECF No. 21-2.) To carry out the Foundation's obligations in accordance with this subcontract, Dr. Rijssenbeek engaged SBU graduate students, despite not receiving certain hardware Telluric was required to provide. (Compl. ¶¶ 39-41.) The Rijssenbeek Agreement was eventually terminated in Fall 2020 and all of the equipment Telluric did provide to the Foundation was returned. (Id. ¶ 42.) Upon termination, the Rijssenbeek Agreement required Telluric to reimburse the Foundation for non-cancellable contractual commitments and financial obligations that the Foundation incurred. (Id. ¶ 44.) Although the Foundation incurred $99,925.47 in such non-cancellable obligations, Telluric has only paid $75,283.67 to date, leaving an outstanding balance of $24,641.80. (Id. ¶¶ 45-48.)

On April 29, 2019, the parties entered into the "Ferdman Agreement," which was modified on November 8, 2019. (Id. ¶ 17.) Ivanciu signed this subcontract for Telluric. (See Ferdman Agmt., ECF No. 21-1.) Similar to Dr. Rijssenbeek, Dr. Ferdman engaged SBU graduate students to help perform the work required under this agreement, which consisted of a three-phase research and development project that was exploratory in nature. (Compl. ¶¶ 17-18, 21-23.) However, Radulescu "constantly interfered with Dr. Ferdman and his students' work." (Id. ¶ 26.) Radulescu "would take up an enormous amount of their time by requesting changes and additional work" be performed, with such additional work being outside the "scope of work" contemplated by the Ferdman Agreement. (Id. ¶¶ 24, 26-27.) He also "incessantly bothered the graduate students directly," resulting in the students complaining to Dr. Ferdman, who had to instruct Radulescu that the students could no longer be contacted. (Id. ¶ 27.) Due to Radulescu's "persistent interference," the first phase of Dr. Ferdman's work took much longer than expected, causing the Foundation to pay additional salary, benefits, and tuition costs. (Id. ¶ 28.) Then, after the first phase concluded, Telluric reneged on its obligation to provide the Foundation with certain equipment and hardware. (Id. ¶¶ 30-32.) Shortly thereafter, the Ferdman Agreement was terminated, triggering a similar termination event clause concerning Telluric's payment for the Foundation's non-cancellable

obligations. (Id. ¶¶ 31-34.) The Foundation contends that Telluric has paid $59,184.66 but still owes $112,109.34, not inclusive of interest. (Id. ¶¶ 34, 36.)

The third subcontract, the "Suchalkin Agreement," was entered into on April 29, 2019. (Id. ¶ 49.) The Foundation completed all performance objective targets under the Suchalkin Agreement; however, Telluric only paid approximately two-thirds of its financial obligations to the Foundation. (Id. ¶¶ 54-57.) The outstanding balance owed to Telluric is $8,292.33, and despite Telluric agreeing to pay this amount following informal negotiations, the parties were unable to finalize a settlement. (Id. ¶¶ 59-62.)

## PROCEDURAL HISTORY

The Foundation commenced this diversity action against Telluric on April 8, 2021. (See generally Compl., ECF No. 1.) In the Complaint, the Foundation asserts claims for breach of contract, unjust enrichment, account stated, promissory estoppel, quantum meruit, and breach of the implied covenant of good faith and fair dealing. Telluric filed an Amended Answer on July 9, 2021 which asserted a counterclaim against the Foundation as well as a Third-Party Complaint against SBU, two SBU employees, three SBU students, Bernstein, and two Doe defendants. (See generally Am. Answer, ECF No. 9.) The parties' respective cross-motions to disqualify followed, with the Foundation's motion being filed on

August 27, 2021 and Telluric's motion being filed on November 5, 2021. (Pl. Mot., ECF No. 26; Def. Mot., ECF No. 55.)

On November 17, 2021 Judge Locke issued his decision on the cross-motions to disqualify. Judge Locke granted the Foundation's motion and found that both Ivanciu and Radulescu should be disqualified from representing Telluric pursuant to New York Rule of Professional Conduct 3.7(a), commonly referred to as the "advocate-witness rule." (Nov. 17, 2021 M&O at 12-14.) As to Ivanciu, Judge Locke concluded that, as Telluric's President, Ivanciu "was extensively and intimately involved with all three contract negotiations at issue, discussing funding and signing each contract on behalf of Telluric, and binding Defendant to those same contracts that it allegedly breached." (Id. at 14.) Judge Locke also found that Ivanciu "appears to be the only witness who can be called to testify regarding Telluric's position as to the Ferdman Agreement's contracted scope of work," as well a "Notice of Intention" to file suit against the Foundation that he drafted in December 2020. (Id. at 14-15.) Then, as to Radulescu, Judge Locke determined his testimony would be necessary to Telluric's claims and defenses, particularly the "technical aspects underpinning Defendant's multiple breach of contract counterclaims." (Id. at 17.) It also appeared to Judge Locke that Radulescu is "the only person who could logically testify regarding Plaintiff's injurious acts." (Id.) Judge Locke premised

this finding upon a Declaration by Radulescu, in which he states that the "Foundation's alleged wrongful acts directly and personally injured [him] by loss of money, property, and expected business gain," (id. at 17 (quoting Radulescu Decl. ¶ 59, ECF No. 39-1)), as well as the absence of any other competent evidence proffered by Telluric to support this component of its claims. Judge Locke then turned to Telluric's motion to disqualify Bernstein and his firm, SSM&P, and denied the motion in its entirety.

## DISCUSSION

### I. Legal Standard

Pursuant to Federal Rule of Civil Procedure 72(a), a party may object to a magistrate judge's order concerning any non-dispositive pre-trial matter. See Fed. R. Civ. P. 72(a). The district judge "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Id. "Under this highly deferential standard of review, a district court may reverse the order only if 'on the entire evidence,' the district court is 'left with the definite and firm conviction that a mistake has been committed.'" Gray v. City of New York, No. 10-CV-3039, 2013 WL 3093345, at *2 (E.D.N.Y. June 18, 2013) (quoting Easley v. Cromartie, 532 U.S. 234, 242 (2001)).

II. Analysis

Telluric objects to Judge Locke's ruling and argues that Ivanciu and Radulescu should not have been disqualified, or alternatively, that both attorneys should only be disqualified from representing Telluric at trial. (See Objs. ¶ 16.) In support of this contention, Telluric claims Judge Locke committed: (1) an error of law because the advocate-witness rule applies only when the attorney-witness serves as trial counsel; and (2) errors of fact because the disqualifications were based upon "contested allegation[s] of the Plaintiff's pleadings, which are contradicted by evidence in the docket." (See id. ¶¶ 4-5, 7.)

As to Defendant's first argument, it contends that, according to Murray v. Metropolitan Life Insurance Co., the "advocate-witness rule applies, first and foremost, where the attorney representing the client before a jury seeks to serve as a fact witness in that very proceeding." (Obj. ¶ 4 (emphasis in original) (quoting Murray v. Metro. Life Ins. Co., 583 F.3d 173, 179 (2d Cir. 2009)). Defendant then cites to Finkel v. Frattarelli Bros., Inc., which relies upon Murray and provides that disqualification under the rule "is triggered only when the attorney actually serves as an advocate before the jury." 740 F. Supp. 2d 368, 373 (E.D.N.Y. 2010) (citing Murray, 583 F.3d at 179). The Court, however, is not persuaded by Finkel's narrow interpretation of Murray and declines to categorically rule that

the advocate-witness rule cannot be utilized to disqualify an attorney from the pre-trial stage of a case. After noting the importance of the advocate-witness rule at the time of trial, the Second Circuit in Murray continued, stating that "the concerns motivating Rule 3.7 are attenuated where, as here, the witness-advocate is not someone who will be trying the case to the jury." Murray, 583 F.3d at 179 (emphasis in original) (internal quotation marks omitted). Just because a concern is attenuated does not mean it has vanished. See Rizzuto v. De Blasio, No. 17-CV-7381, 2019 WL 1433067, at *9 n.7 (E.D.N.Y. Mar. 29, 2019) ("Though the [C]ourt's concerns may generally be attenuated in such cases, this does not mean that the district court can never disqualify an attorney from serving as pre-trial counsel under the advocate-witness rule, which our precedent makes clear is within the court's discretion."). Accordingly, to the extent Defendant asserts that Judge Locke committed an error of law, such an objection is OVERRULED.

Defendant's second argument focuses on purported errors of fact committed by Judge Locke. (See Obj. ¶¶ 5-8.) Defendant contends that Radulescu is Telluric's attorney in charge of all technical and legal aspects associated with the underlying contracts, and Ivanciu had very limited and sporadic participation on the administrative side of Telluric's operations. (Id. ¶ 5.) According to Defendant, this distinction demonstrates that Ivanciu

lacks personal knowledge to testify as to the issues raised in this case. (Id.) However, Defendant's attempt to substantiate this contention with a citation to one paragraph in the Radulescu Declaration -- which, as a whole, does not even mention Ivanciu -- is unavailing. (Id. (citing Radulescu Decl. ¶ 10 ("My [Principal Investigator] responsibilities cover all technical and legal decisions made by Telluric Labs on this project, staff, consultants, and subcontractors.").)

Next, Defendant objects to Judge Locke's purported finding on page 13 of his decision which provides that Ivanciu was Defendant's "sole representative." (Id. ¶¶ 5-7 (citing Nov. 17, 2021 M&O at 13).) In its review of Judge Locke's decision, the Court does not interpret Judge Locke to make such a categorical finding. For example, on this particular page, Judge Locke recited the legal principles applicable to a disqualification motion and noted: "[W]here an attorney is the 'sole representative for [a party] at numerous meetings and conversations negotiating the terms of [an agreement]' at issue in the litigation, disqualification is likewise warranted." (Nov. 17, 2021 M&O at 13 (quoting Multi-Juice, S.A. v. Snapple Beverage Corp., No. 02-CV-4635, 2003 WL 1961636, at *7 (S.D.N.Y. 2003)).)

Moreover, to the extent Defendant objects to the necessity of Ivanciu or Radulescu's testimony on the scope of work for the Ferdman Agreement because Plaintiff's in-house counsel was

involved in that contract's formation, Defendant's argument misses the mark. (See Obj. ¶¶ 9-10.) Judge Locke found that Ivanciu "appears to be the only witness who can be called to testify regarding Telluric's position as to the Ferdman Agreement's contracted scope of work." (Nov. 17, 2021 M&O at 14-15 (emphasis added); Obj. ¶ 9.) Whether or not Plaintiff has its own representatives who can testify regarding the scope of work is immaterial because the critical inquiry is who, from Telluric, can testify on its behalf. In Radulescu's Declaration, which was expressly quoted by Judge Locke, Radulescu states he was "unaware why the modified scope of work did not make it into the agreement." (Nov. 17, 2021 M&O at 14 (citing Radulescu Decl. ¶ 29).) If Radulescu is unable to provide this information from Telluric's point of view, it necessarily follows that the only other source would be Ivanciu.[1] The Court also notes that even if this finding is erroneous, and despite Defendant's attempts to minimize Ivanciu's role at Telluric, Judge Locke has correctly found that Ivanciu's testimony is inherently necessary to defend Telluric against Plaintiff's claims, and to support Telluric's affirmative defenses, counterclaims and third-party claims. Although the

[1] This conclusion also defeats Defendant's objection that Radulescu and Ivanciu will provide duplicative testimony -- an objection which was lodged without any evidentiary support. (See Obj. ¶¶ 12, 13, 15.) Notably, Defendant did not draw the Court's attention to a declaration or affidavit prepared by Ivanciu.

Objections primarily focus on minimizing Ivanciu's role with respect to the Ferdman Agreement, that is not the only contract at issue in this case with which Ivanciu was involved. (See, e.g., Radgowski Decl. ¶¶ 2, 5 (declaration by Plaintiff's Senior Grants and Contracts Specialist stating that Ivanciu was involved in the negotiations of the Rijssenbeek Agreement).)

Although this Court has been wary of disqualifying attorneys during the early stages of a case before discovery has commenced, see Quality Door & Hardware, Inc. v. Stanley Sec. Sols., Inc., No. 19-CV-4574, 2020 WL 6582010, at *7 (E.D.N.Y. Nov. 10, 2020), such a concern counseled against disqualification where it was not clear whether the advocate-witness's testimony would be necessary. The circumstances presented by the instant case, however, could not be clearer. Judge Locke's finding that "Ivanciu's and Radulescu's positions as Defendant's corporate officers and sole fact witnesses preclude them from representing Telluric in this litigation" is neither clearly erroneous nor contrary to law, and it will not be disturbed by the Court. (Nov. 17, 2021 M&O at 13-14.)

## CONCLUSION

For the stated reasons, **IT IS HEREBY ORDERED that** Defendant's objections are OVERRULED and Judge Locke's November 17, 2021 M&O is AFFIRMED.

**SO ORDERED.**

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: August 24, 2022
Central Islip, New York