UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| THE RESEARCH FOUNDATION FOR THE STATE UNIVERSITY OF NEW YORK, | CIV. ACTION NO.  2:21-cv-01898-JS-SIL |
| *Plaintiff/Counterclaim-Defendant*, |  |
| v. |  |
| TELLURIC LABS, LLC. | **MEMORANDUM OF LAW IN SUPPORT OF THE RESEARCH FOUNDATION'S MOTION TO DISMISS THE FIRST AMENDED ANSWER WITH COUNTERCLAIMS AND FIRST AMENDED THIRD-PARTY COMPLAINT** |
| *Defendant/Counterclaim-Plaintiff*. |  |
| v. |  |
| STATE UNIVERSITY OF NEW YORK AT STONY BROOK, PETER I. BERNSTEIN, MICHAEL FERDMAN, PETER MILDER, FARID SAMANDI, TIANCHU JI, SHENGSUN CHO |  |
| *Third-Party Defendant(s)* |  |

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... iii

I.     PRELIMINARY STATEMENT ..............................................................................1

II.    STANDARD OF REVIEW ......................................................................................2

ARGUMENT................................................................................................................3

III.   TELLURIC HAS NOT STATED A CLAIM FOR VIOLATION OF THE
DEFEND TRADE SECRETS ACT §1836(B)(3)(B)(I)(II) (COUNT
1) ...............................................................................................................3

IV.   TELLURIC HAS NOT STATED A CLAIM FOR TORTIOUS IDEA
MISAPPROPRIATION (COUNT 2) ...........................................................5

V.    TELLURIC HAS NOT STATED A CLAIM FOR FRAUD (COUNT 3) ..................6

A. TELLURIC HAS NOT PROPERLY PLED A CLAIM FOR "IP PROTECTION".......7

B. TELLURIC HAS NOT PROPERLY PLED "FALSE CLAIMS" ................................8

C. TELLURIC HAS NOT PROPERLY PLED "FRAUDULENT CONCEALMENT".....9

D. TELLURIC HAS NOT PROPERLY PLED "CONCEALMENT OF DEVIATION
FROM THE PROJECT OBJECTIVES" ...................................................................10

E. TELLURIC HAS NOT PROPERLY PLED "MISREPRESENTATION OF
THE RESEARCH AGREEMENT"...........................................................................11

VI.   TELLURIC HAS NOT STATED A CLAIM FOR INTENTIONAL
BUSINESS TORTS (COUNT 4)................................................................12

VII.  TELLURIC'S CONVERSION CLAIM IS FATALLY FLAWED
(COUNT 8) .............................................................................................15

VIII. TELLURIC HAS NOT STATED A CLAIM FOR BREACH OF THE
IMPLIED COVENANT OF GOOD FATH AND FAIR DEALING
(COUNT 11) ...........................................................................................17

IX.   TELLURIC HAS NOT STATED A CLAIM FOR MALICIOUS
INTENTIONAL INTERFERENCE WITH A CONTRACTUAL
RELATIONSHIP (COUNT 13) ................................................................18

X.   TELLURIC HAS NOT STATED A CLAIM FOR FRAUD IN THE
INDUCEMENT (COUNT 14) ....................................................................20

XI.   TELLURIC'S BREACH OF FIDUCIARY DUTY CLAIM IS FATALLY
FLAWED (COUNT 16) .............................................................................22

XII.   TELLURIC HAS FAILED TO PROSECUTE THIS ACTION .................................24

CONCLUSION.................................................................................................25

# TABLE OF AUTHORITIES

*Abbott Labs. v. Adelphia Supply USA*,
  No. 15-CV-5826, 2017 U.S. Dist. LEXIS 1007 (E.D.N.Y. January 4, 2017). ........................ 20

*Alvord & Swift v. Stewart M. Muller Constr. Co.*,
  46 N.Y.2d 276 (1978) ............................................................................................... 20

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .............................................................................................. 2, 3

*AUA Private Equity Partners, LLC v. Soto*,
  No. 17-CV-8035, 2018 U.S. Dist. LEXIS 58356 (S.D.N.Y. Apr. 5, 2018).............................. 3

*Balta v. Ayco Co., LP*,
  626 F. Supp. 2d 347 (W.D.N.Y. 2009) ...................................................................... 23

*Barbagallo v. Marcum LLP*,
  No. 11-CV-1358, 2012 U.S. Dist. LEXIS 66550 (E.D.N.Y. May 11, 2012).......................... 23

*Barr v. Abrams*,
  810 F.2d 358 (2d Cir. 1987).................................................................................... 15

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................. 2

*Brooks v. Key Trust Co. Nat'l Ass'n*,
  809 N.Y.S.2d 270 (N.Y. App. Div. 3d Dep't 2006))................................................... 23

*Broughel v. Battery Conservancy*,
  No. 07-cv-7755 (GBD), 2010 U.S. Dist. LEXIS 25496 (S.D.N.Y. Mar. 16, 2010). ............... 6

*Brownstone Inv. Grp., L.L.C. v. Levey*,
  468 F. Supp. 2d 654 (S.D.N.Y. 2007) ......................................................................... 7

*Liberty Mut. Ins. Co. v. York Hunter Inc.*,
945 F. Supp. 742 (S.D.N.Y. 1996) ......................................................................... 12

*Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*,
70 N.Y.2d 382 (1987) .......................................................................................... 12

*Consol. Catholic Admin. Servs. v. Usi Holdings Corp.*,
03-CV-0865, 2005 U.S. Dist. LEXIS 63198 (E.D.N.Y. March 29, 2005) .............................. 12

*Data Device Corp. v. W.G. Holt, Inc.*,
19-CV-4105, 2020 U.S. Dist. LEXIS 223438 (E.D.N.Y. November 20, 2020) ................ 23, 24

*DiFolco v. MSNBC Cable LLC.*,
622 F.3d 104 (2d Cir. 2010). ................................................................................. 4

*DiRose v. PK Mgmt. Corp.*,
691 F.2d 628 (2d Cir. 1982) ................................................................................... 14

*Downey v. General Foods Corp.*,
31 N.Y.2d 56 (1972) ............................................................................................. 5

*Duncan v. AT&T Communications*,
668 F. Supp. 232 (S.D.N.Y. 1987) .......................................................................... 15

*Estate of Ellington ex rel. Ellington v. Harbrew Imports Ltd.*,
812 F.Supp.2d 186, 197 (E.D.N.Y. 2011) ............................................................... 25

*ExpertConnect, L.L.C. v. Fowler*,
No. 18-CV-4828, 2019 U.S. Dist. LEXIS 114931 (S.D.N.Y. July 10, 2019) .......................... 3

*Harper & Row Publishers, Inc. v. Nation Enterprises*,
723 F.2d 195  (2d  Cir. 1983) ................................................................................. 16

*Harsco Corp. v. Segui*,
91 F.3d 337  (2d Cir. 1996) ................................................................................ 7, 8

*Heckman v. Town of Hempstead*
568 F.Appx. 41 (2d Cir. 2014) ............................................................................... 4

*Heendeniya v. St. Joseph's Hosp. Health Ctr.*,

830 F. App'x 354, 357 (2d Cir. 2020) ................................................................................. 24

*Hylan Elec. Contr., Inc. v. MasTec N. Amer., Inc.*
    903 N.Y.S.2d 528 (N.Y. App. Div. 2d Dep't 2010) ...................................................... 23

*Indep. Asset Mgmt. LLC v. Zanger*,
    538 F. Supp. 2d 704 (S.D.N.Y. 2008) ........................................................................ 20

*International Halliwell Mines, Ltd. v. Continental Copper & Steel Industries, Inc.,*
    544 F.2d 105 (2d Cir. 1976)..............................................................................13, 14

*Jews for Jesus, Inc. v. Jewish Cmty. Relations Council of N.Y., Inc.*,
    968 F.2d 286 (2d Cir. 1992) .......................................................................................... 20

*Kahn v. Crames*,
    459 N.Y.S.2d 941 (3d Dep't 1983) ................................................................................. 16

*Kirch v. Liberty Media Corp.*,
    449 F.3d 388 (2d Cir. 2006) ...............................................................................19, 20

*Lama Holding Co. v. Smith Barney Inc.*,
    88 N.Y.2d 413 (N.Y. 1996) ........................................................................................ 19

*Lerner v. Fleet Bank, N.A.*,
    459 F.3d 273 (2d Cir. 2006) ........................................................................................... 7

*Liberty Mut. Ins. Co. v. York Hunter Inc.*,
    945 F.Supp. 749 (S.D.N.Y. 1996) ................................................................................. 13

*Manley v. Utzinger*,
    No. 10-CV-2210 (LTS)(HBP), 2011 WL 2947008, (S.D.N.Y. 2011) ........................................ 4

*McGhan v. Ebersol*,
    608 F. Supp. 277 (S.D.N.Y. 1985) ................................................................................... 5

*McKie v. Estate of Dickinson*,
    No. 20-CV-2973, 2021 U.S. Dist. LEXIS 144179 (E.D.N.Y. August 2, 2021) ..................... 19

*Medtech Prod. Inc. v. Ranier, LLC*,
    596 F. Supp. 2d 778 (S.D.N.Y. 2008) ........................................................................... 20

*Mills v. Polar Molecular Corp.*,
   12 F.3d 1170 (2d Cir. 1993)...................................................................................... 7

*Oasis Music, Inc. v. 900 U.S.A., Inc.*,
   614 N.Y.S.2d 878, (Sup. Ct. N.Y. Co. 1994).......................................................... 5

*Papa's-June Music, Inc. v. McLean*,
   921 F. Supp. 1154 (S.D.N.Y. 1996).......................................................................... 11

*Paul v. Haley*,
   588 N.Y.S.2d 897 (2d Dep't 1992)............................................................................ 6

*Rothman v. Gregor*,
   220 F. 3d 81(2d Cir 2000)........................................................................................ 4

*Sea–Land Service, Inc. v. Banca De Republica De Dominica*,
   697 F.Supp. 253, 260 (E.D.La.1988) .................................................................... 25

*Shields v. Citytrust Bancorp.*,
   25 F.3d 1124 (2d Cir. 1994)...................................................................................... 7

*Sikarevich Family L.P. v. Nationwide Mut. Ins. Co.*,
   30 F. Supp. 3d 166 (E.D.N.Y. 2014)........................................................................ 17

*Sommer v. Fed. Signal Corp.*,
   79 N.Y.2d 540 (1992) .............................................................................................. 12

*Telenor E. Invest AS v. Altimo Holdings & Invs. Ltd.*,
   567 F. Supp. 2d 432 (S.D.N.Y. 2008)...................................................................... 7

*U.S. West Financial Services, Inc. v. Tollman*,
   786 F. Supp. 333 (S.D.N.Y. 1992)............................................................................ 13

*Universal Reinsurance Co., Ltd. v. St. Paul Fire and Marine Ins. Co.*,
   No. 95-CV-8436 (WHP), 1999 U.S. Dist. LEXIS 14947 S.D.N.Y. Sept. 29, 1999)................ 14

*Van Brunt v. Rauschenberg*,
   799 F. Supp. 1467 (S.D.N.Y. 1992).......................................................................... 16

*VTech Holdings Ltd. v. Lucent Techs., Inc.*,
   172 F. Supp. 2d 435 (S.D.N.Y. 2001) ................................................................. 11

*Wall v. CSX Transp., Inc.*,
   471 F.3d 410 (2d Cir. 2006) ................................................................................. 20

*Weaver v. Axis Surplus Ins. Co.*,
   No. 13-CV-7174, 2014 U.S. Dist. LEXIS 154746 (E.D.N.Y. Oct. 30, 2014) ................... 17, 18

*Weinstein v. Cardis Enters. Int'l N.V.*,
   No. 16-CV-2661, 2017 U.S. Dist. LEXIS 123600 (E.D.N.Y. August 3, 2017). ..................... 21

*White v. N.Y. City Dep't of Corr. Med. Unit*,
   No. 09-CV-4238 (NGG)(LB), 2011 U.S. Dist. LEXIS 109107 (E.D.N.Y. Aug. 24, 2011) ...... 2

**Statutes**

18 U.S.C. § 1836(b)(1) ............................................................................................... 3

18 U.S.C. § 1839(3) ..................................................................................................... 8

Fed. R. Civ. P. 8(a) ..................................................................................................... 15

Fed. R. Civ. P. 9(b) ............................................................................................. passim

Fed. R. Civ. P. 12(b)(6) ........................................................................................... 1, 2

Fed. R. Civ. P. 41 ................................................................................................... 2, 24

Fed. R. Civ. P. 41(b) ............................................................................................ 24, 25

Fed. R. Civ. P. 41(c) ................................................................................................... 25

Fed. R. Civ. P. 55(a) ................................................................................................... 24

**Other Authorities**

23 N.Y.Jur. 2d, Conversion, and Action for Recovery of Chattel, § 23 (1982) ........................... 16

Restatement (Second) of Torts, § 222 A(1) (1965) ...................................................................... 16

Restatement (Second) of Torts, § 224 (1965)............................................................................. 16

Plaintiff/Counterclaim-Defendant, The Research Foundation for the State University of New York ("Research Foundation" or "RF"), by and through the undersigned counsel and pursuant to Fed. R. Civ. P. 12(b)(6), hereby submits this Memorandum of Law in Support of its Motion to Dismiss the First Amended Answer with Counterclaims and First Amended Third-Party Complaint ("Counterclaims") of Telluric Labs, LLC., ("Telluric").  Counterclaim-Defendant State University of New York at Stony Brook joins this Motion to Dismiss the Counterclaims as the present Motion is directed to Counts 1, 2, 4, and 16 as these Counts are also directed to Counterclaim-Defendant State University of New York at Stony Brook.  Third-Party Defendants, Drs. Ferdman and Milder, Mr. Samandi, Mr. Cho and Mr. Ji ("TPD") join this Motion to Dismiss the Counterclaims as the present Motion is directed to Counts 1, 2, 13, and 16 as these Counts are also directed to the TPD.  In the alternative, the RF, SUNY and TPD move to dismiss Telluric's counterclaims for failure to prosecute.

## I.      PRELIMINARY STATEMENT

The RF is a private domestic non-profit education corporation. The RF's primary responsibility is to administer grants and sponsored programs on behalf of the State University of New York ("SUNY"). (Dkt. No. 001, ¶ 8-10.)

Telluric received a grant from the United States Department of Energy to conduct a research project entitled "IP Access Gateway" (the "Project"). (*Id.* at ¶ 14.) The RF entered into three separate agreements with Telluric. Through these agreements the RF was contracted to assist with research activities related to the Project. Each agreement was with an individual faculty member at Stony Brook University to utilize each faculty member's expertise in their respective fields and subcontract certain portions of research and development for the Project. (*Id.* at ¶¶ 17-62.)  After the faculty members performed their research activities consistent with

1

their obligations under the respective contracts, Telluric failed to fully pay the RF. (*Id.*)  The RF instituted this action alleging breach of contract, unjust enrichment, account stated, promissory estoppel and quantum meruit. (*Id.* at ¶7).

Telluric has answered and asserted sixteen scattershot counterclaims, nine of which are the subject of the present motion to dismiss (i.e., Counts 1, 2, 3, 4, 8, 11, 13, 14 and 16).

Furthermore, and in the alternative, all sixteen of Telluric's counterclaims should be dismissed for failure to prosecute.  It is well established that a corporation may not appear in federal court except through counsel.  Telluric has been advised by the Court numerous times that it cannot litigate this action without counsel.  Despite these directives, Telluric has violated court orders and failed to retain counsel.[1]

## II.    <u>STANDARD OF REVIEW</u>

On a motion to dismiss under Rule 12(b)(6), the Court "must accept all factual allegations in the complaint [counterclaim] as true and draw all reasonable inferences in the plaintiff's [Defendant/Counterclaim-Plaintiff's] favor."  *White v. N.Y. City Dep't of Corr. Med. Unit*, No. 09 CV 4238(NGG) (LB), 2011 WL 4356359, at *2, 2011 U.S. Dist. LEXIS 109107, at *5 (E.D.N.Y. Aug. 24, 2011).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  To survive a motion to dismiss, a Defendant/Counterclaim-Plaintiff "must do more than allege facts that are 'merely consistent with a [Plaintiff's] liability.'"  *White*, 2011 WL 4356359, at *2, 2011 U.S. Dist. LEXIS, at *5 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007))  Rather, "he must allege facts that 'allow[ ] the court to draw the reasonable

---

[1] See Memorandum of Law in Support of Motion to Dismiss and for Default filed on behalf of TPD, Peter I. Bernstein filed in this action on Feb. 17, 2023 pursuant to Rules 12(b)(6) and 41 of the Federal Rules of Civil Procedure-Point I.

inference that the [Plaintiff/Counterclaim-Defendant] is liable for the misconduct alleged.'" *Id.* (quoting *Iqbal*, 556 U.S. at 663). "If a [Defendant/Counterclaim-Plaintiff] does not 'nudge[ ][his] [counterclaims] across the line from conceivable to plausible, [the] [counterclaims] must be dismissed.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

## ARGUMENT

## III.   TELLURIC HAS NOT STATED A CLAIM FOR VIOLATION OF THE DEFEND TRADE SECRETS ACT §1836(B)(3)(B)(I)(II) (COUNT 1)

Telluric's Count 1 is not just implausible, it is inconceivable because Telluric has no trade secrets to defend. "To state a claim for trade secret misappropriation under the DTSA, a plaintiff must plausibly allege that (1) it possessed a trade secret, and (2) the defendant misappropriated the trade secret." *ExpertConnect, L.L.C. v. Fowler,* No. 18-CV-4828, 2019 U.S. Dist. LEXIS 114931, 2019 WL 3004161, at *3 (S.D.N.Y. July 10, 2019) (citing 18 U.S.C. § 1836(b)(1)). The DTSA defines "misappropriation" as the "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" or "disclosure or use of a trade secret of another without express or implied consent." *AUA Private Equity Partners, LLC v. Soto,* No. 17-CV-8035, 2018 U.S. Dist. LEXIS 58356, 2018 WL 1684339, at *4 (S.D.N.Y. Apr. 5, 2018) (quoting 18 U.S.C. § 1839(3)). Thus, the DTSA provides three alternative bases for liability: (1) acquisition, (2) disclosure, or (3) use. *Id.* (citations omitted).

Telluric cannot plausibly argue that any information disclosed to the RF is a trade secret because Telluric readily admits that "The Telluric's (sic) Trade Secrets were accessible only with passwords" (Dkt. No. 11-1, ¶168)[2]. None of the information received by Drs. Ferdman and

---

[2] Certain documents provided to the Research Foundation from Telluric are marked "Protected Proprietary and Confidential Telluric Labs LLC". The Ferdman Agreement established this designation protocol at Section 3

3

Milder from Telluric was accessible only with passwords.  (*See,* Decs. of Drs. Ferdman and

Milder, Exhibits 1 and 2). The Court should consider the Declarations of Dr. Ferdman and

Milder and/or take judicial notice of same.

On a motion to dismiss, "the Court is entitled to consider facts alleged in the complaint

and documents attached to it or incorporated in it by reference, documents 'integral' to the

complaint and relied upon in it." *Heckman v. Town of Hempstead,* 568 F. App'x 41, 43 (2d. Cir.

2014); *see Manley v. Utzinger,* No. 10 Civ. 2210 (LTS)(HBP), 2011 WL 2947008, at *1 n.1

(S.D.N.Y. 2011)("The Court may consider any written instrument attached to the complaint,

statements or documents incorporated into the complaint by reference, and documents possessed

by or known to the plaintiff and upon which the plaintiff relied in bringing the suit."). Moreover,

a document may be incorporated when a plaintiff had possession or knowledge of the document,

upon which they relied in drafting the complaint. *See Rothman v. Gregor*, 220 F. 3d 81, 88 (2d.

Cir 2000) (holding the complaint is deemed to include "documents plaintiffs either possessed or

knew about and upon which they relied in bringing the suit.").

A court may additionally consider a document not incorporated by reference into the

complaint "where the complaint 'relies heavily upon its terms and effect," thereby rendering the

document 'integral' to the complaint." *DiFolco v. MSNBC Cable LLC.,* 622 F.3d 104, 111 (2d

Cir. 2010).

None of the documents transmitted by Telluric to Drs. Ferdman or Milder were

password-protected, nor were they otherwise designated as a trade secret by Telluric.

If a Telluric trade secret is <u>only</u> accessible with passwords (as Telluric admits at Dkt. No.

11-1, ¶168) and no passwords or password-protected information were provided by Telluric to

---

(Protected Information).  There is no reference to or contemplation of trade secrets in the Ferdman Agreement, which was negotiated and agreed to by Michael Ivanciu, Esq., President of Telluric Labs.

Drs. Ferdman or Milder, then Telluric did not convey any trade secrets to Drs. Ferdman or

Milder. The first Count fails to state any plausible claim upon which relief can be granted.

## IV.   TELLURIC HAS NOT STATED A CLAIM FOR TORTIOUS IDEA MISAPPROPRIATION (COUNT 2)

To state a claim under New York law for misappropriation of an idea, Telluric must

satisfy two elements. First, Telluric must establish that a legal relationship existed between the

parties. *See generally McGhan v. Ebersol,* 608 F. Supp. 277, 284 (S.D.N.Y. 1985); *Oasis Music,*

*Inc. v. 900 U.S.A., Inc.,* 161 Misc. 2d 627, 631, 614 N.Y.S.2d 878, 881 (Sup. Ct. N.Y. Co.

1994).

Second, Telluric must establish that the idea disclosed is novel. Novelty of an idea is an

essential element of the New York tort of misappropriation. Without it, the idea is not

protectable as property. *See, e.g., Downey v. General Foods Corp.,* 31 N.Y.2d 56, 61, 286

N.E.2d 257, 334 N.Y.S.2d 874, 877 (1972).

Telluric has failed to satisfy at least the second element-that ideas disclosed were novel,

because no explicit ideas are provided in the Counterclaims.  Specifically, ¶¶ 176-185 of the

Counterclaims (Dkt. No. 11-1) purport to allege the basis for this failed Count, but these

paragraphs allude to vague secrets and concepts.  Nowhere in these paragraphs, or any other

portion of the Counterclaims is an enumeration of what specific, novel ideas were disclosed to

the RF or TPD that were allegedly misappropriated.

By failing to identify the allegedly misappropriated ideas, Telluric also necessarily fails

in providing any proof of the novelty of those ideas. Telluric, who "bears the burden of coming

forward with proof of novelty, cannot rest on mere assertions of novelty and originality, but must

instead demonstrate some basis in fact for those claims." *Paul v. Haley*, 183 A.D.2d 44, 588

N.Y.S.2d 897, 903 (2d Dep't 1992).  Telluric does not come forward with any proof to

demonstrate that any of their undefined "ideas" are truly novel.  Telluric, who "cannot rest on mere assertions of novelty and originality" does exactly that, merely asserting that "both the TDC ("time delay circuit") and the whole FPGA ("field programmable gate array") associated supporting architecture was novel to the Foundation and Cross Defendants".  (*See* Dkt. No. 11-1, ¶183).  No "proof of novelty" has been demonstrated.

Additionally, "[t]he test for novelty is rather stringent [and] the idea must show true invention and not a mere adaptation of existing knowledge." *Broughel v. Battery Conservancy*, No. 07-cv-7755 (GBD), 2010 U.S. Dist. LEXIS 25496, 2010 WL 1028171, at *4 (S.D.N.Y. Mar. 16, 2010). With its unsubstantiated and bare assertions merely that the TDC and whole FPGA are "novel", Telluric cannot meet the stringent test for idea misappropriation.

## V.     TELLURIC HAS NOT STATED A CLAIM FOR FRAUD (COUNT 3)

The Third Cause of Action is for "Fraud". This "Fraud" count is broken up into five separate sub-causes of "IP protection", "False Claims", "Fraudulent Concealment", "Concealment of deviation from the project objectives", and "Misrepresentation of the research agreement".  Each and every one of these "fraud" sub-causes is pled insufficiently and cannot be sustained, first because the counterclaim does not satisfy the heightened pleading standard for fraud-based claims and second, the claims are redundant with the several breach of contract counts 5-7, 9 & 10, and as such should be dismissed.

It is axiomatic that all of Telluric's fraud-based claims are subject to the Federal Rules of Civil Procedure Rule 9(b)'s heightened pleading standard. To satisfy Rule 9(b)'s heightened pleading standard, these elements must be alleged with **specificity**. Namely, Telluric must "(1) detail the statements (or omissions) that the [Defendant/Counterclaim-Plaintiff] contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were

made, and (4) explain why the statements (or omissions) are fraudulent." *Harsco Corp. v. Segui*, 91 F.3d 337, 347 (2d Cir. 1996); *accord Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006); *Shields v. Citytrust Bancorp.*, 25 F.3d 1124, 1128 (2d Cir. 1994); *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993). "In short, a plaintiff must set forth the who, what, when, where and how of the alleged fraud." *Telenor E. Invest AS v. Altimo Holdings & Invs. Ltd.*, 567 F. Supp. 2d 432, 441-42 (S.D.N.Y. 2008) (internal citations and quotation marks omitted).  Telluric's counterclaims fall far short of meeting the heightened pleading requirement.

Paragraph 186 of the Counterclaim (Dkt. No. 11-1) is ineffectual at curing the deficiencies of the Third Cause of Action.  Specifically, ¶ 186 generally refers to allegations made previously in the Counterclaim, but Telluric does not point to any specific paragraphs or misrepresentations. *See Brownstone Inv. Grp., L.L.C. v. Levey*, 468 F. Supp. 2d 654, 660 (S.D.N.Y. 2007) (in fraud allegations, general reference to another paragraph in the complaint did not clearly refer to any statement or representation).  Therefore, the generality of ¶ 186 cannot be relied upon to meet any specific pleading standard.

Further, Telluric fails to satisfy several elements of this heightened pleading standard, as discussed below:

### A.   TELLURIC HAS NOT PROPERLY PLED A CLAIM FOR "IP PROTECTION"

Telluric pleads, on "information and belief" that certain, unspecified false promises were made by the RF to Telluric.  This vague assertion does not fulfill the required pleading standard.

Paragraphs 187-190 do not: (1) <u>detail</u> any statements between the RF and Telluric whatsoever, (2) identify the specific speaker for the RF, (3) state where or when those statements were made <u>and</u> (4) with any degree of specificity explain why any such promise was fraudulent in leading to an alleged "public disclosure" of Proprietary Information.

Telluric's Counterclaim lacks any allegations for Fraudulent "IP Protection" that meet the specificity standard required to reach Rule 9(b)'s heightened pleading standard.  Thus, this portion of the Counterclaim should be dismissed.

### B.    TELLURIC HAS NOT PROPERLY PLED "FALSE CLAIMS"

In ¶ 187, Telluric pleads, on "information and belief" that certain, unspecified, anonymous false representations were made by the RF at large, as well as by unspecified Cross-Defendants (of which there are eight, including two John Does), to Telluric.  There is no stand-alone cause of action for "False Claims", thus, this fatally flawed line of accusation appears to be grounded in a fraud theory of alleged fraudulent representations. The vague assertions of this portion of Count III are woefully deficient.  To support this cause of action, Telluric must have "(1) detailed the statements (or omissions) that the [Defendant/Counterclaim-Plaintiff] contends are fraudulent, (2) identified the speaker, (3) stated where and when the statements (or omissions) were made, and (4) explained why the statements (or omissions) are fraudulent." *Harsco Corp.*, 91 F.3d 337, 347.  Telluric did not satisfy a single one of these four requisite elements.

Paragraphs 187-198 do not <u>detail</u> any statements between the Foundation and Telluric whatsoever, stating only that, without attribution, "all objectives of the Phase I including unspecified objectives…were delivered" to allegedly induce payment from an unspecified "Federal agency".  No specific statement is provided.  No specific evidence of such delivery is provided.  No specific "Federal agency" is provided.

Although Telluric offers some quoted text, its source is unclear, and the timing of the statements are unknown.  Additionally, no degree of specificity is provided as to why any of these statements were actually fraudulent, other than the bald conclusory statements saying so.

Paragraph 198 nonsensically states that: "[a]ttorney Molly Worden further request through interstate communication for payment money providing false claims of total completion of the project."  This virtually unintelligible assertion lacks any detail of any communication occurring at any time and wholly lacks any connection to any alleged fraudulent conduct resulting from this "further request".

The Counterclaim lacks any allegations for Fraudulent "False Claims" that meet the specificity standard required to reach Rule 9(b)'s heightened pleading standard.  Thus, this portion of the Counterclaim should be dismissed.

### C.    TELLURIC HAS NOT PROPERLY PLED "FRAUDULENT CONCEALMENT"

Telluric pleads, on "information and believe[sic]" that Dr. Ferdman imposed opacity and control to prevent discovery of misuse of funds.  Even if this were true—which it is not— these acts of "opacity and control" are not specified by time, place or action in the barely one-half page total discussion of this sub-Count.  This sub-Count is yet another vague assertion made up of a jumble of unattributed and disconnected thoughts (essentially a "word salad") that fails to meet the heightened pleading standard for fraud.

Paragraphs 199-201 do not (1) detail any statements between the RF and Telluric, stating only that, without attribution, "[t]he students cannot meet with you directly…", (2) do not clearly identify the specific speaker for the RF, (3) do not specifically state where or when those statements were made and (4) do not with any degree of specificity explain why communications regarding students being unable to meet directly due to their educational activities was fraudulent.

The Counterclaim lacks any allegations for "Fraudulent Concealment" that satisfy the specificity standard required to reach Rule 9(b)'s heightened pleading standard. Thus, this portion of the Counterclaim should be dismissed.

###   D.   TELLURIC HAS NOT PROPERLY PLED "CONCEALMENT OF DEVIATION FROM THE PROJECT OBJECTIVES"

Telluric pleads, on "information and belief" that the "binary encoder" was never developed, and that Dr. Ferdman "secretively developed" another component. No detail is provided for this allegedly "secretively developed" component, whether it truly exists, where it is, etc. There is also a bare allegation that Dr. Ferdman "diverted resources and effort for didactic purposes to the loss of the project." No detail is provided as to the nature or amount of resources, what kind of resources, or how any diversion contributed or led to an alleged loss of the project. These vacant assertions do not nearly comply with the required pleading standard.

Paragraphs 202-211 do not (1) <u>detail</u> any statements between the RF or Dr. Ferdman and Telluric whatsoever, (2) do not identify the specific speaker for the RF for any <u>detailed</u> statements, (3) do not state where or when those statements were made <u>and</u> (4) do not with any degree of specificity explain <u>why</u> any such lack of development or diversion of resources and effort resulted in an actual and specific fraud on Telluric.

Telluric's Counterclaim lacks any allegations for Fraudulent "Concealment of Deviation from the Project Objectives" that satisfy the specificity standard required to reach Rule 9(b)'s heightened pleading standard. Thus, this portion of the Counterclaim should be dismissed.

###   E.   TELLURIC HAS NOT PROPERLY PLED "MISREPRESENTATION OF THE RESEARCH AGREEMENT"

Telluric pleads, vaguely, that they believed they were entering an Evaluative Testing Agreement, not a Research Agreement, when Telluric signed the Ferdman Agreement. The

Counterclaim alleges Telluric's ambiguous understanding of the Ferdman Agreement led to fraud, albeit the term "fraud" is not even used in this portion of the Counterclaim.  This vague assertion does not remotely approach the required pleading standard.

Paragraphs 212-225 of Dkt. No. 11-1 do not (1) <u>detail</u> any specific statements between the RF and Telluric whatsoever, (2) do not identify the specific speaker for the RF, (3) do not state where or when those statements were made <u>and</u> (4) do not with any degree of specificity whatsoever explain why Telluric's own misunderstanding of the contract scope constitutes any kind of fraud or "misrepresentation".

The Counterclaim lacks any allegations for Fraudulent "Misrepresentation of research agreement" that meet the specificity standard required to reach Rule 9(b)'s heightened pleading standard.  Thus, this portion of the Counterclaim should be dismissed.

Tellingly, ¶ 225 of this "Fraud" Counterclaim states "[b]y reason of the foregoing, Foundation is liable to Telluric for **breach of contract** in the amount of no less than $2,356,000.00." (emphasis added) (*Id.*).

Even if any of the vague accusations of fraud were sufficient to meet the heightened pleading standard required of them-which they are not-under well-settled New York law, a claim for fraud will be dismissed unless it alleges facts that are "sufficiently distinct from the breach of contract claim." *Papa's-June Music, Inc. v. McLean*, 921 F. Supp. 1154, 1162 (S.D.N.Y. 1996). "[P]art of the rationale for striking duplicative fraud claims is that there is ordinarily no difference between contract damages for nonperformance and fraud damages." *VTech Holdings Ltd. v. Lucent Techs., Inc.*, 172 F. Supp. 2d 435, 440-41 (S.D.N.Y. 2001).  Further, the New York Court of Appeals has held that if a "plaintiff is essentially seeking enforcement of the

11

bargain, the action should proceed under a contract theory." *Sommer v. Fed. Signal Corp.*, 79 N.Y.2d 540, 552, 593 N.E.2d 1365, 583 N.Y.S.2d 957 (1992).

Your Honor has previously held that "a contract claim may not be pleaded as a tort claim unless a legal duty independent of the contract itself has been violated." (*Consol. Catholic Admin. Servs. v. Usi Holdings Corp.*, 03-cv-0865, 2005 U.S. Dist. LEXIS 63198, at *10 (E.D.N.Y. March 29, 2005) (Seybert)), *citing Liberty Mut. Ins. Co. v. York Hunter Inc.*, 945 F. Supp. 742, 749 (S.D.N.Y. 1996) (*citing Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d 382, 389, (1987))*; *Sommer v. Fed. Signal Corp.*, 79 N.Y.2d 540, 331-52 (1992). "Otherwise, such claim is subsumed into Plaintiff's contract action, as it is not predicated upon any duty beyond that established by the contract." (*Consol. Catholic Admin. Servs.*, at *10).

Telluric's admission that all damages under the "fraud" count of the Counterclaim are based on liability for "breach of contract" damages is evidence that there is no difference between any of Telluric's alleged contract damages and fraud damages. Also, due to the lack of specifically pled facts, there is no evidence that any allegation of fraud is distinct from the breach of contract claims found in other Counts of the Counterclaim. Because there is no difference between contract damages and fraud damages, based on Telluric's own admission, under well-settled New York law, the claim for Fraud should be dismissed.

## VI. TELLURIC HAS NOT STATED A CLAIM FOR INTENTIONAL BUSINESS TORTS (COUNT 4)

Under the umbrella term of "Intentional Business Torts", Telluric alleges both "Coercion" and "Intentional Tortious Disclosure of IP". The first allegation is improperly pled and should be dismissed. That is, there is no stand-alone cause of action for "coercion" under New York Law. The second allegation is a nebulous list of seemingly unconnected grievances,

12

which does not amount to a cognizable cause of action either. Count 4 is unsustainable and should be dismissed.

Regarding the so-called "coercion", the allegations seem to hinge on an alleged refusal to return property that is allegedly Telluric's. (Dkt. No. 11-1, ¶ 241). The "coercion" supposedly occurred when the "Foundation used information Telluric shared in good faith" to continue to refuse to return Telluric's property. This good faith information is unknown and unspecified.

The exact basis of this fictional standalone claim of "coercion" is unclear. It is equally unfathomable as to whether or not this is "coercion" to enter a contract or if this is "coercion" to cause Telluric to purchase replacement property. Either way, the alleged "coercion" claim is fatally flawed because it is not a stand-alone cause of action and sounds more in duress.

Telluric alleges that "[u]nder duress" Telluric accepted to pay "ransom" money for return of the property. But even if construed as a cause of action for duress, Telluric's counterclaim fails.

A party invoking economic duress to void a contract "shoulders a heavy burden." *International Halliwell Mines, Ltd. v. Continental Copper & Steel Industries, Inc.*, 544 F.2d 105, 108 (2d Cir. 1976). To establish duress, Telluric must show (1) a threat; (2) unlawfully made; (3) which caused involuntary acceptance of contractual terms; (4) because no alternative was available. *See U.S. West Financial Services, Inc. v. Tollman*, 786 F. Supp. 333, 338 (S.D.N.Y. 1992). Telluric meets none of these requirements.

Telluric does not allege any threat, unlawful or otherwise, that caused their involuntary acceptance of contract terms—terms agreed to by its lead attorney and President on April 8, 2019—or that Telluric had no alternative partner to enter into a research agreement with.

13

Further, a party's ability to invoke duress diminishes in proportion to its delay in repudiating the contract. *See International Halliwell Mines, Ltd.,* 544 F.2d at 108.  The Ferdman Agreement was signed by Mr. Michael Ivanciu, President of Telluric on April 8, 2019 (and (terminated) lead counsel to Telluric).  Paragraph 241 of Dkt. No. 11-1 states the cause of action arose on October 8, 2020, 18 months after the Agreement was signed.  If Telluric was actually under duress, that determination is only properly made at the time the contract was signed.  Telluric's 18-month delay eviscerates any plausible invocation of duress.

In addition, Telluric's allegations that Telluric was unable to have their property returned (e.g. ¶ 240) and that they purchased new equipment (e.g. ¶ 248) cannot support a claim for duress.

The allegation that Telluric was unable to have their property returned is temporally challenged and fatally flawed. This allegation pertains to events that allegedly occurred during 2020, which was when Telluric requested the return of the Equipment.  *See* ¶ 233.  However, the Counterclaim was not filed until July 9, 2021, more than a year after requests for return were made, with such delay wholly negating any plausible duress theory.

In *Universal Reinsurance*, the court found that pleading duress nine months after the agreement was not prompt enough to render the agreement void.  *Universal Reinsurance Co., Ltd. v. St. Paul Fire and Marine Ins. Co.*, No. 95 Civ. 8436 (WHP), 1999 U.S. Dist. LEXIS 14947, 1999 WL 771357, at *10 (S.D.N.Y. Sept. 29, 1999) *see also DiRose v. PK Mgmt. Corp.*, 691 F.2d 628, 634 (2d Cir. 1982) (collecting cases in which delays ranging from six months to two years constituted forfeiture of duress claim).

For these reasons, Telluric's "coercion" or "duress" sub-count should be dismissed.

Telluric's "Intentional Tortious Disclosure of IP" claim (Dkt. No. 11-1, ¶¶ 249-254) wanders into the unintelligible-and stays there.  Telluric's allegations are "so baldly conclusory that they fail to give notice of the basic events and circumstances of which [the pleader] complains." *Duncan v. AT&T Communications,* 668 F. Supp. 232, 234 (S.D.N.Y. 1987).  Initially, these allegations are based on the same alleged occurrences of an alleged public disclosure of alleged Telluric Proprietary Information, which is duplicative of the first cause of action, the second cause of action, and seventh cause of action.  For this reason alone, the "Intentional Tortious Disclosure of IP" should be dismissed.

Further, this supposed intentional business tort allegation (disclosure of IP) constitutes nothing more than a listing of damages, speculative and otherwise, allegedly suffered by Telluric. It is well-settled that "individual allegations, although grammatically intact, may be so baldly conclusory that they fail to give notice of the basic events and circumstances of which the [pleader] complains. Such allegations are meaningless and, as a matter of law, insufficient to state a claim." *Duncan v. AT&T Communications,* 668 F. Supp. 232, 234 (S.D.N.Y. 1987)(citing *Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir. 1987)).

In this case, Telluric's Count 4 is so inadequately pleaded, conclusory, and unsupported by factual allegations that it fails to even inform the RF of the nature of its claim or make the requisite showing that Telluric is entitled to relief, as required by the Federal Rules of Civil Procedure Rule 8(a). Accordingly, the Court should grant the motion to dismiss Count 4.

## VII.  **TELLURIC'S CONVERSION CLAIM IS FATALLY FLAWED (COUNT 8)**

Neither the RF nor any third-party defendant converted Telluric equipment. The equipment has been available for pick-up (on notice due to Covid restrictions) from Stony Brook University since at least October 2020.   Conversion is not established by mere temporary

15

interference with property rights; "the exercise of unauthorized dominion and control to the complete exclusion of the rightful possessor" is required. *Harper & Row Publishers, Inc. v. Nation Enterprises,* 723 F.2d 195, 201 (2d Cir. 1983). Such interference with possessory rights must be intentional, however. *See, e.g., Van Brunt v. Rauschenberg,* 799 F. Supp. 1467, 1473 (S.D.N.Y. 1992) (citing *Kahn v. Crames,* 92 A.D.2d 634, 459 N.Y.S.2d 941 (3d Dep't 1983)). *See also* Restatement (Second) of Torts, § 222 A(1) (1965). Nonfeasance or negligence is inadequate to establish exercise of unauthorized dominion or control over a chattel that gives rise to a claim for conversion. *See, e.g.,* 23 N.Y.Jur. 2d, Conversion, and Action for Recovery of Chattel, § 23 (1982); Restatement (Second) of Torts, § 224 (1965).   Any alleged intentional interference with Telluric's rights is obviated by Telluric's explicit agreement with the RF to retrieve the disputed equipment.

Telluric expressly admits ¶ 58 of the RF Complaint (Dkt. No. 001). Paragraph 58 of the Complaint alleges as follows:

> 58. Upon information and belief, during informal negotiations between Foundation and Defendant for the amounts owed to Foundation under the Ferdman and Suchalkin Agreements, **Telluric agreed to pay the outstanding amount owed under the Suchalkin Agreement in exchange for return of certain equipment Telluric left at Stony Brook University**, and the promise to engage in good faith settlement discussions regarding the Ferdman Agreement. (emphasis added).

Telluric readily admits that it did willingly, initially agree to pay the balance Plaintiff alleges is due under the one of the three disputed agreements in a settlement exchange for the equipment (see [Dkt. No 11-1] at ¶ 58).

Specifically, Mr. Ivanciu, acting as President/counsel for Telluric, agreed in writing, after an arms-length negotiation, to retrieve the disputed equipment from Stony Brook University. On December 8, 2020, during the heart of the Covid pandemic and while immediate access to any Stony Brook University buildings was significantly restricted, Mr. Ivanciu willingly, explicitly

and unequivocally agreed that "…Telluric Labs will pay to RF the balance amount of $8292.33… in exchange for … all Telluric Lab's materials, tools and equipment…" (*See, Ex. 3 of Declaration of Marian C. Rice filed Feb. 17, 2023 in this action*).

Furthermore, Telluric was informed by email and was provided with photographic evidence and an inventory list that the Equipment has, at all times, been safely and securely housed at Stony Brook University and ready for retrieval. On June 22, 2021 Telluric was again reminded that the Equipment was available for pick-up at Stony Brook University subject to Covid restrictions (*See, Id. Ex. 4*).

The allegations of a conversion cannot support a viable claim since Telluric has admitted that it agreed to retrieve the allegedly converted equipment and the RF has not intentionally interfered with Telluric's possessory right.  Thus, Count 8 should be dismissed against the RF and TPD.

## VIII.   TELLURIC HAS NOT STATED A CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (COUNT 11)

"Under New York law, where a party pleads a breach of contract claim *and* a breach of the implied covenant of good faith and fair dealing claim based upon the same facts, 'the latter claim' should 'be dismissed as redundant.'" *Weaver v. Axis Surplus Ins. Co.*, No. 13-cv-7174, 2014 U.S. Dist. LEXIS 154746, at *52 (E.D.N.Y. Oct. 30, 2014) (quoting *Sikarevich Family L.P. v. Nationwide Mut. Ins. Co.*, 30 F. Supp. 3d 166, 170 (E.D.N.Y. 2014)) (emphasis supplied). Count 11 is plainly redundant with three (3) breach of contract counterclaims, not at issue in the present motion.

Telluric's Breach of Implied Covenant of Good Faith and Fair Dealing (Count 11) rests wholly on an alleged breach of contract claim, *i.e.*, breach of the Ferdman Agreement.  Any alleged breach of the Ferdman Agreement is covered, extensively, in three other separate causes

17

of Action-The Fifth Cause of Action -"BREACH OF CONTRACT-Failure to Deliver in Breach of §1 of the Ferdman Agreement"; The Sixth Cause of Action -"BREACH OF CONTRACT – Failure to negotiate pursuant to §1 of the Ferdman Agreement", and the Seventh Cause of Action - "BREACH OF CONTRACT – Failure to provide 30-days' notice for content published" (in alleged violation of paragraph 5 of the Ferdman Agreement).

Specifically, in Count 11 of the Counterclaim, ¶¶ 309-322 (Dkt. No. 11-1) describe how alleged lack of a deliverable product injured Telluric (alleged by the Fifth Cause of Action) or how the RF allegedly failed to help Telluric mitigate damages by not finding another principal investigator (PI) (alleged by the Sixth Cause of Action).  Further, the remaining paragraphs of Count 11, ¶¶ 323-329 (*Id.*) describe how an alleged public disclosure of Telluric's alleged trade secrets has allegedly harmed Telluric (alleged by the Seventh Cause of Action).  All of the other allegations provided in Count 11 are either (A) vague assertions of "lack of transparency" or various "subversive" activities, or (B) mere grievances regarding communications between Dr. Ferdman and various students, none of which are alleged to be, or are in any way whatsoever, in breach of any term of the Ferdman Agreement.

Because this claim for a Breach of the Implied Covenant of Good Faith and Fair Dealing rests wholly on the same exact facts that form the alleged basis for the Fifth through Seventh counterclaims, this 11th Count for Breach of the Implied Covenant of Good Faith and Fair Dealing should "be dismissed as redundant".  *See, Weaver* at *52.

## IX.   **TELLURIC HAS NOT STATED A CLAIM FOR MALICIOUS INTENTIONAL INTERFERENCE WITH A CONTRACTUAL RELATIONSHIP (COUNT 13)**

Under New York law, the elements of tortious interference with contract are (1) "the existence of a valid contract between the plaintiff and a third party"; (2) the "defendant's knowledge of the contract"; (3) the "defendant's intentional procurement of the third-party's

breach of the contract without justification"; (4) "actual breach of the contract"; and (5) "damages resulting therefrom." *See McKie v. Estate of Dickinson*, No. 20-cv-2973, 2021 U.S. Dist. LEXIS 144179, at *50, 2021 WL 3292516 (E.D.N.Y. August 2, 2021), *citing Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401-02 (2d Cir. 2006) (quoting *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 668 N.E.2d 1370, 1375, 646 N.Y.S.2d 76 (N.Y. 1996)).

Initially "malicious" is not an element of this cause of action. The reason for its inclusion in the title of Count 13 is improper.

Telluric apparently presumes there is a contract between Telluric and a third-party (i.e. the RF). In an attempt to understand Telluric's hopelessly confused allegations as they apply to New York's elements of tortious interference with a contract, Telluric is apparently alleging that Telluric is the Plaintiff; Telluric apparently alleges that the RF is the "third-party" having an existing contract (Ferdman Agreement) between the RF and Telluric; and alleges that Dr. Ferdman, personally, is the Defendant that allegedly procured the breach of the Ferdman Agreement (the agreement between Telluric and the RF). Accepting, *pro arguendo* this premise, Count 13 fails at element (3) which requires Telluric to plausibly allege that Dr. Ferdman intentionally procured the RF's breach of the contract without justification.

Rather than craft a proper allegation (which they cannot), Telluric attempts to shoehorn the RF into its fiction by alleging that the RF is somehow "vicariously liable" for Dr. Ferdman's alleged intentional breach of the contract between the RF and Telluric. (Dkt No. 11-1, ¶ 352)

This fictional theory of liability boils down to an absurd notion—that the RF is vicariously liable due to the RF's alleged adoption, concealment and support of Dr. Ferdman's acts (essentially a conspiracy), which caused a breach of contract between the Foundation and Telluric. It is nonsense.

One failing of this count is that vicarious liability is not an element of a claim for "malicious" intentional interference with a contractual relationship. The count fails again due to lack of any allegation suggesting that the RF acted "without justification."  As noted above, there are five elements to a tortious interference with contract claim, *see Kirch*, 449 F.3d at 401-02 , but the third element – that the defendant intentionally procured a third-party's breach of contract *without justification* – is the "key inquiry" in any such case.  *Jews for Jesus, Inc. v. Jewish Cmty. Relations Council of N.Y., Inc.*, 968 F.2d 286, 292 (2d Cir. 1992).  *See also Indep. Asset Mgmt. LLC v. Zanger*, 538 F. Supp. 2d 704, 711 (S.D.N.Y. 2008); *Alvord & Swift v. Stewart M. Muller Constr. Co.*, 46 N.Y.2d 276, 413 N.Y.S.2d 309, 385 N.E.2d 1238, 1241 (1978).  Absent factual allegations showing that a defendant's actions were taken without justification, a tortious interference claim must be dismissed.  *See Medtech Prod. Inc. v. Ranier, LLC*, 596 F. Supp. 2d 778, 797 (S.D.N.Y. 2008) ("Because Medtech has not pled that the alleged interferences were unjustified, the court dismisses Medtech's tortious interference with contractual relations claims.").

Telluric's Counterclaim lacks *any* allegation – factual or conclusory – that the Foundation's alleged actions were taken "without justification".  For this further critical reason, Telluric's Thirteenth counterclaim should be dismissed.

## X.   TELLURIC HAS NOT STATED A CLAIM FOR FRAUD IN THE INDUCEMENT (COUNT 14)

The elements of a "fraudulent inducement" claim are functionally equivalent to the elements of a general fraud claim. *See, e.g., Wall v. CSX Transp., Inc.*, 471 F.3d 410, 415-16 (2d Cir. 2006).  Therefore, the allegation of fraudulent inducement must also satisfy Rule 9(b)'s heightened pleading standard, i.e. the elements must be alleged with **specificity**.  *Abbott Labs. v.*

20

*Adelphia Supply USA*, No. 15-cv-5826 2017 U.S. Dist. LEXIS 1007, at *37, 2017 WL 57802 (E.D.N.Y. January 4, 2017).

Elements of fraudulent inducement-which must satisfy Rule 9(b)'s heightened pleading standard-under New York law are: "(1) the defendant made a materially false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance") (internal quotations & citations omitted). *Weinstein v. Cardis Enters. Int'l N.V.*, No. 16-cv-26612017 U.S. Dist. LEXIS 123600, at *30 (E.D.N.Y. August 3, 2017).

Count 14 for Fraud in the Inducement fails to satisfy the pleading requirements of Rule 9(b). Paragraphs 360-369 of Dkt. No. 11-1 list various, wide-ranging allegations of actions taken by unspecified members of the RF that allegedly fraudulently induced Telluric to agree to unspecified technical statements of work and unspecified "several legal terms", which allegedly caused a shift from a "Service" agreement to a "Research" agreement.

Similar to the fundamental flaws in Count 3 of the Counterclaim, explained above, Count 14 is insufficiently pled as well. Telluric does not include a single, specific statement that they contend was fraudulent. In fact, the only quoted text with attribution in this Count is from the Ferdman Agreement itself, which was reviewed and agreed to by Mr. Ivanciu, a licensed attorney before this Court and President of Telluric. Is Telluric alleging that the basis of this fraudulent inducement is found in their President's lack of understanding of the meaning of the contract clause he agreed to? With such little detail, it is impossible to know.

Further, any reliance on an "oral" agreement as a source of fraud is moot, as section 18 of the Ferdman Agreement provides an Integration Clause which clearly states:

> This AGREEMENT, including the attached Exhibit A and B, constitutes the entire and only Agreement between the parties

21

relating to the Study, and all prior negotiations, representations, agreements, and understandings are superseded hereby. No agreements altering or supplementing the terms hereof, including the exhibits attached hereto, may be made except by a written document signed by the duly authorized representatives of the parties.

No written document altering the terms of Exhibit A, where the Disclaimer is referred to in ¶ 366 of the counterclaim, is presented or exists.

Lastly, there is no plausible support for why the Entire Agreement (i.e. integration) clause of section 18 of the Ferdman Agreement and the written disclaimer, **both** agreed to by Mr. Ivanciu, a licensed attorney before this Court and President of Telluric, in writing, are the basis for any materially false or fraudulent statements whatsoever.   Telluric has not and cannot sustain a plausible claim that the Foundation made a materially false representation based on the current pleadings.

Therefore, the allegations of a fraudulent inducement cannot support a viable claim since no plausible "material false representation" was made by the Foundation to Telluric. Moreover, the allegations fail to meet the specificity standard required to reach Rule 9(b)'s heightened pleading standard.  Thus, Count 14 of the Complaint should be dismissed.

## XI.  TELLURIC'S BREACH OF FIDUCIARY DUTY CLAIM IS FATALLY FLAWED (COUNT 16)

This claim is duplicative of the breach of contract claims (Fifth, Sixth, and Seventh Causes of Action of the Counterclaims) as the alleged fiduciary duty owed to Telluric could only be wholly based upon the Ferdman Agreement alone.

Under New York law, "a cause of action alleging breach of a fiduciary duty, which . . . is merely duplicative of a breach of contract claim, cannot stand." *Data Device Corp. v. W.G. Holt, Inc.*, 19-CV-4105, 2020 U.S. Dist. LEXIS 223438, at *16 (E.D.N.Y. November 20,

2020)(Seybert); *citing Barbagallo v. Marcum LLP*, No. 11-CV-1358, 2012 U.S. Dist. LEXIS 66550, 2012 WL 1664238, at *10 (E.D.N.Y. May 11, 2012) (*quoting Hylan Elec. Contr., Inc. v. MasTec N. Amer., Inc.*, 74 A.D.3d 1148, 903 N.Y.S.2d 528, 530 (N.Y. App. Div. 2d Dep't 2010)).  Telluric does not even allege what fiduciary duty is owed to it by RF and the TPD, using neither the word "fiduciary" nor "duty" in ¶¶ 376-391.  Since there is no allegation of the source of a fiduciary duty to Telluric, it must be stemming from the Ferdman Agreement, which is referred to throughout ¶¶ 376-391.

Such claims of breach of fiduciary duty are duplicative where the allegations of fiduciary wrongdoing "are either expressly raised in plaintiff's breach of contract claim or encompassed within the contractual relationship by the requirement implicit in all contracts of fair dealings and good faith." *Balta v. Ayco Co., LP*, 626 F. Supp. 2d 347, 360 (W.D.N.Y. 2009) (quoting *Brooks v. Key Trust Co. Nat'l Ass'n*, 809 N.Y.S.2d 270, 273, 26 A.D.3d 628 (N.Y. App. Div. 3d Dep't 2006)).

Telluric's breach of fiduciary duty claim is identical in substance to the breaches of contract claim, listed as the Fifth, Sixth, and Seventh Causes of Action of the Counterclaims, and is therefore duplicative.

Lastly, "a plaintiff may not maintain both a contract claim and a breach of fiduciary duty claim, without 'allegations that, apart from the terms of the contract, the parties created a relationship of higher trust than would arise from their contracts alone, so as to permit a cause of action for breach of fiduciary duty independent of the contractual duties.'" *Data Device Corp.*, 2020 U.S. Dist. LEXIS 223438, at *16-17 (Seybert).  Telluric has not, and cannot, allege that apart from the terms of the Ferdman agreement, the parties created any other relationship whatsoever.  Furthermore, Paragraph 18 of the Ferdman Agreement states that "[t]his

23

AGREEMENT, including the attached Exhibit A and B, constitutes the entire and only

Agreement between the parties relating to the Study".

Telluric's fiduciary duty claim is duplicative of the breach of contract claim and should

therefore be dismissed.

## XII. <u>TELLURIC HAS FAILED TO PROSECUTE THIS ACTION</u>

Telluric has failed to appear or otherwise defend this action and a default has been noted

pursuant to Rule 55(a) of the Federal Rules of Civil Procedure.  [Dkt. No. 123]. Telluric's failure

to prosecute has been thematic of its approach to this litigation and warrants dismissal under Rule

41(b).  Where the prosecuting party fails to comply with Court orders, the Second Circuit considers

five factors for dismissal under Rule 41(b):

> (1) the duration of the plaintiff's failure to comply with the court order, (2) whether
> plaintiff was on notice that failure to comply would result in dismissal, (3) whether
> the defendants are likely to be prejudiced by further delay in the proceedings, (4) a
> balancing of the court's interest in managing its docket with the plaintiff's interest
> in receiving a fair chance to be heard, and (5) whether the judge has adequately
> considered a sanction less drastic than dismissal.

*Heendeniya v. St. Joseph's Hosp. Health Ctr.*, 830 F. App'x 354, 357 (2d Cir. 2020) (citation

omitted).  Each of these factors favors dismissal of Telluric's counterclaims in this case.

By ignoring orders from Judge Locke to retain counsel on two occasions, including the

most recent Order from October 6, 2022, Telluric has successfully delayed matters by many

months. Telluric has been advised by the Court that it cannot litigate without counsel.  The RF has

been prejudiced because they have been forced to litigate frivolous, unintelligible claims and

subjected to needless costs for retaining documents on cloud servers. The final two factors for Rule

41(b) dismissal also favor the dismissal of the present case.  Telluric has had many opportunities

to be heard on this issue of counsel.  Without counsel, they participated in oral arguments in front

of this Court twice on this very issue.  *See*, Dkt. 110; Dkt. 116.  And, during these oral arguments the Court has already entertained remedies less drastic than dismissal by grating Telluric extra time to obtain counsel.  Still, Telluric failed to comply.  Rule 41(c) provides that Rule 41 "applies to a dismissal of any counterclaim, crossclaim, or third-party claim" and therefore Telluric's counterclaims and third-party claims can be dismissed pursuant to Rule 41(b).  *See, Estate of Ellington ex rel. Ellington v. Harbrew Imports Ltd*., 812 F.Supp.2d 186, 197 (E.D.N.Y. 2011), citing *Sea–Land Service, Inc. v. Banca De Republica De Dominica*, 697 F. Supp. 253, 260 (E.D.La.1988).

## CONCLUSION

For the foregoing reasons, the RF respectfully requests that the Court issue an order granting its motion to dismiss Counterclaims 1, 2, 3, 4, 8, 11, 13, 14 and 16 and in the alternative to dismiss all Counterclaims and Third-Party claims for failure to prosecute.

Dated: February 17, 2023
    Garden City, New York

SCULLY, SCOTT, MURPHY & PRESSER, PC

/s/ Peter I. Bernstein_____
Peter I. Bernstein
Seth M. Weinfeld
400 Garden City Plaza-Ste 300
Garden City, New York, 11530
(516) 742-4343
Email: pibernstein@ssmp.com
Email: sweinfeld@ssmp.com

*Counsel for The Research Foundation for The State University of New York and Third-Party Defendants Dr. Michael Ferdman, Dr. Peter Milder, Mr. Farid Samandi, Mr. Shengsun Cho, and Mr. Tianchu Ji*

.

25

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this the 17th day of February 2023, the foregoing **NOTICE OF MOTION** with **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS** were served via electronic mail and first-class mail, upon the following:

Michael Ivanciu, Esq.
450 Stockholm Street
Ridgewood, NY 11385
E-mail: michael@ivanciulawfirm.com

Codrut Radu Radulescu
105 Lock St, STE 211
Newark, NJ 07103
E-mail: radur@hotmail.com

Telluric Labs, LLC
157 Broad Street, Unit 201
Red Bank, NJ 07701
michael@telluriclabs.com

I HEREBY CERTIFY that on this the 17th day of February 2023, the foregoing **NOTICE OF MOTION** with **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS** were served via ECF, upon the following:

Marian C. Rice
Meredith D. Belkin
L'ABBATE, BALKAN, COLAVITA
& CONTINI, L.L.P.
*Attorneys for Third-Party Defendant,*
*Peter I. Bernstein*
3 Huntington Quadrangle, Suite 102S
Melville, New York 11747
(516) 294-8844

26

Nicholas Mesiti
HESLIN ROTHENBERG FARLEY
   & MESITI
*Attorneys for Third-Party Defendant*
*State University of New York at Stony Brook*
5 Columbia Circle
Albany, New York 12203
nick.mesiti@hrfmlaw.com
thomas.sica@hrfmlaw.com

/s/ Peter I. Bernstein
Peter I. Bernstein
Seth Weinfeld
400 Garden City Plaza-Ste 300
Garden City, New York, 11530
(516) 742-4343

*Attorneys for Plaintiff/Counterclaim-Defendant*
*The Research Foundation for The State University*
*Of New York and Third-Party Defendants*
*Dr. Michael Ferdman, Dr. Peter Milder,*
*Mr. Farid Samandi, Mr. Tianchu, Ji*
*and Mr. Shengsun Cho*